UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

WILLIE THOMAS GOSIER,

                                        Plaintiff,

        v.                                                          6:23-cv-01119
                                                                    (DNH/TWD)

UTICA POLICE DEPARTMENT, et al.,

                                        Defendants.

_____

APPEARANCES:

WILLIE THOMAS GOSIER
*Plaintiff, pro se*
24067
Oneida County Correctional Facility
6075 Judd Road
Oriskany, NY 13424

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie

Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)  Plaintiff, who is

presently confined at Oneida County Correctional Facility, seeks leave to proceed *in forma

pauperis* ("IFP").  (Dkt. No. 4.)

## I.    IFP APPLICATION[1]

        "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

_____

[1]  On September 5, 2023, Plaintiff's first IFP application was denied and this action was
administratively closed.  (Dkt. Nos. 2, 3.)  The case was reopened on September 18, 2023, upon
receipt of the required filing.  (Dkt. Nos. 4, 5, 6.)

09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP application, the Court finds he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate authorization form required in this District.  (Dkt. No. 5.)  Accordingly, the Court grants Plaintiff's IFP application.  (Dkt. No. 4.)

## II.    SUFFICIENCY OF THE COMPLAINT

### A.    Standard Of Review

Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

---

[2]  Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant

3

fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## B.    Summary of the Complaint

The following allegations are taken from the complaint. On June 11, 2023, defendant Officer Janiel Rodriguez, of the Utica Police Department ("UPD"), "pulled over [Plaintiff's] car without probable cause and proceeded to illegally search [his] vehicle." (Dkt. No. 1 at 9.[3]) Plaintiff claims "all three defendants"—UPD Officer Rodriguez, UPD Officer James Amuso, and UPD Investigator Peter Paladino—"initiated and continued proceeding against me without

---

[3] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

probable cause." *Id.* "Because of this malicious prosecution," Plaintiff "was arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* However, "no probable cause supported the traffic stop, [Plaintiff's] arrest, continued confinement, or continued prosecution." *Id.*

Plaintiff avers he "sustained and suffered damages as a result of this malicious prosecution" including "a deprivation of liberty apart from the initial seizure." *Id.* Plaintiff claims "[a]ll three defendants misrepresented material facts from the City of Utica criminal court and Corrections and Community Supervision, to facilitate a forced erroneous conviction against me." *Id.* at 10. Plaintiff continues, "[t]his entire criminal proceeding would have been resolved in my favor if my motions and due process wasn't terminated because of the defendants concealed malicious and misconduct." *Id.*

Plaintiff then states he has "met all five elements" for his malicious prosecution claim as follows:

> (1) All three defendants Janiel Rodriguez, James Amuso, and Peter Paladino have caused me continued confinement and prosecution.
>
> (2) The original action was terminated in favor of my criminal defense.
>
> (3) No probable cause supported my original arrest, continued confinement, or prosecution.
>
> (4) All three defendants acted with malice. A lack of probable cause created an inference of malice by Janiel Rodriguez and James Amuso both UPD officers. Falsifying evidence is sufficient to show malice in front of a jury in USDC, NDNY.
>
> (5) I have sustained damages and Fourth Amendment violation because of the defendants unlawful actions of malicious prosecution without probable cause.

*Id.* at 10. Plaintiff requests "[m]onetary relief from all three defendants in the amount of $450,000 and dismissal of Criminal Possession of a Controlled Substance 7th and Aggravated

Unlicensed Operation of Motor Vehicle 3rd." *Id*. at 4, 11.  Plaintiff also seeks "dismissal of charges pending in the City of Utica criminal court." *Id*. at 4.

## III.    DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (internal quotations and citations omitted).  To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  An official may not be held liable for constitutional violations simply because he held a high position of authority.  *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).  "Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself."  *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347, 361 (W.D.N.Y. 2021) (internal quotations and citation omitted).  A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy, custom, or practice.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

### A.    Malicious Prosecution

Plaintiff's complaint asserts a single cause of action against defendants Rodriguez, Amuso, and Paladino.  (Dkt. No. 1 at 4.)  "To state a § 1983 claim for malicious prosecution, a

plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Ramos v. City of New York*, No. 1:18-CV-04938 (ALC), 2020 WL 4041448, at *5 (S.D.N.Y. July 16, 2020); *see also Thompson v. Clark*, 596 U.S. 36, 39 (2022); *Marshall v. Randall*, 719 F.3d 113, 118-19 (2d Cir. 2013).  Relevant here, "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff [must] show that his prosecution ended without a conviction." *Thompson*, 596 U.S. at 39; *see also Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) ("A 'favorable termination' does not occur until the prosecution against the plaintiff has 'conclusively' ended.").

Construed liberally, Plaintiff has failed to allege facts in support of each element of a malicious prosecution claim, including that the criminal prosecution for "Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd" "ended without a conviction."  (*See* Dkt. No. 1; *Thompson*, 596 U.S. at 39.)

Although the complaint states, "the original action was terminated in favor of my criminal defense," Plaintiff also claims, "[t]his entire criminal proceeding would [have] been resolved in [his] favor if [his] motions and due process wasn't terminated because of the defendants concealed malicious and misconduct." (Dkt. No. 1.)  Plaintiff claims "[a]ll three defendants misrepresented material facts from the City of Utica criminal court and Corrections and Community Supervision, to facilitate a forced erroneous conviction against [him]," but Plaintiff has not alleged what material facts were mispresented.  *Id*. at 10.  Moreover, Plaintiff seeks "dismissal" of "charges filed against him" (i.e., Criminal Possession of a Controlled

Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd ). *Id*. at 11. In short, Plaintiff's malicious prosecution is plead in a wholly conclusory fashion. *See Joseph v. JRF Income Tax Bus. Servs.*, No. 21-CV-3869, 2021 WL 3516421, at *5 (E.D.N.Y. Aug. 10, 2021) ("A complaint that offers nothing more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' or that 'tenders naked assertions devoid of further factual enhancement' is insufficient.") (quoting *Iqbal*, 556 U.S. at 678).

Therefore, the Court recommends dismissal of this claim.

**B.    False Arrest**

To the extent Plaintiff's complaint could be construed as asserting a false arrest claim against defendants Rodriguez, Amuso, and Paladino, the claim does not survive initial review.

"To establish a false arrest or imprisonment claim under either New York State law or section 1983, a plaintiff must show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Albergottie v. New York City*, No. 08 CIV. 8331 (SHS), 2011 WL 519296, at *7 (S.D.N.Y. Feb. 15, 2011); *see also Arrington v. City of New York*, No. 14-CV-3023 (ARR) (VMS), 2014 WL 11350821, at *3 (E.D.N.Y. Dec. 22, 2014). "The existence of probable cause is a complete defense to a Section 1983 claim for false arrest, and constitutes justification for the arrest." *Williams v. Suffolk Cty.*, 284 F. Supp. 3d 275, 284-85 (E.D.N.Y. 2018). Moreover, "[i]f, following the arrest, the plaintiff was convicted of the charges against him, that conviction normally would be conclusive evidence of probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986).

Here, Plaintiff alleges he "was arrested and charged with" Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd and "no probable cause supported the traffic stop, [Plaintiff's] arrest, continued confinement, or continued prosecution." *Id*. However, as noted above, Plaintiff also alleges an "erroneous conviction" and seeks dismissal of those charges.

Thus, the complaint fails to state a claim for false arrest.

**C.      *Heck v. Humphrey***

As a separate matter, Plaintiff's claims may be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck*, 512 U.S. at 486-87. In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id*. at 486-87. *See Perry v. City of Albany*, No. 8:20-CV-165 (GTS/DJS), 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020); *see also Duamutef v. Morris*, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under Heck where the plaintiff's underlying conviction had not been overturned); *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007) (dismissing plaintiff's false arrest, false imprisonment, and malicious prosecution claims as barred under *Heck*).

Additionally, insofar as Plaintiff seeks to have this Court intervene in a state court criminal proceeding, this Court must abstain. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70, 73 (2013).

### D.    Utica Police Department

Plaintiff lists the Utica Police Department as a defendant in the caption of the complaint. It is well established that "[a] police department is an administrative arm of [a] municipal corporation," and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citations omitted); *see Hester-Bey v. Police Dep't*, No. 12-CV-3320, 2012 WL 4447383, at *1 (E.D.N.Y. Sept. 24, 2012) (explaining that "Section 1983 provides that an action may only be maintained against a 'person' who has deprived another of rights under the 'Constitution and Laws,' and holding that, because "[t]he New York City Police Department is not a 'person' within the meaning of section 1983 [it] is therefore[ ] not a suable entity." (quoting 42 U.S.C. § 1983)). Thus, the Utica Police Department is not a proper defendant for Plaintiff's section 1983 claims.

Further, to the extent plaintiff intended to bring his claims against the City of Utica, of which the Utica Police Department "is an administrative arm," he has failed to plead such a claim. To prevail on a § 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."

*Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of respondeat superior.'" *Roe*, 542 F.3d at 36 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).

As set forth above, Plaintiff has not plausibly alleged a deprivation of a constitutional right. Additionally, Plaintiff does not allege, and nothing in his complaint suggests, that any of the allegedly wrongful acts or omissions on the part of any City employee are attributable to a municipal policy or custom. *See, e.g.*, *Cotto v. City of New York*, 803 F. App'x 500, 504 (2d Cir. 2020) ("Cotto's allegations do not support a *Monell* claim because they focus on the individual officers and isolated events leading to Cotto's stop, detention, and prosecution without plausibly alleging a custom or policy pursuant to which those violations occurred.") Thus, Plaintiff has not made a showing, in his pleadings, sufficient to impose *Monell* liability on the City of Utica. *See Hayward v. City of New York*, No. 12-CV-3220 ENV, 2012 WL 3580286, at *1 (E.D.N.Y. Aug. 17, 2012).

**E.    Leave to Amend**

In this case, it is not clear whether better pleading would permit Plaintiff to cure the deficiencies identified above. In light of his *pro se* status, the Court recommends granting Plaintiff the opportunity to file an amended complaint if he desires to proceed with this action. Any such amended complaint, which shall supersede and replace in its entirety the previous complaint filed by Plaintiff, must contain a caption that clearly identifies, by name, each individual Plaintiff is suing in the present lawsuit and must bear the case number assigned to this action. The body of Plaintiff's amended complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph. Thus, if Plaintiff claims that

his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.  In addition, Plaintiff should include facts regarding the status or ultimate disposition of his criminal case.

## IV.    CONCLUSION

WHEREFORE, for these reasons, it is hereby

ORDERED that Plaintiff's IFP application (Dkt. No. 4) is GRANTED,[4] and it is further

RECOMMENDED that Plaintiff's complaint (Dkt. No. 1) be DISMISSED WITH LEAVE TO AMEND pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and it is further

RECOMMENDED that Utica Police Department be TERMINATED as a defendant; and it is further

ORDERED that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[4]  Plaintiff is advised that although he has been granted IFP status, he will still be required to pay the $350 filing fee for this action, overtime, along with any other costs he may incur, including copying and/or witness fees.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated: November 14, 2023
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]  At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [ *sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2]  By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]  Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*
28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4041448
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Miguel RAMOS, Plaintiffs,

v.

The CITY OF NEW YORK et al., P.O. Lenonoxan
Samerson, and P.O. "John" Gandolfi, in their
official and individual capacity, Defendants.

1:18-cv-04938 (ALC)
|
Signed 07/16/2020

**Attorneys and Law Firms**

Mustapha Lakpene Ndanusa, Davis Ndanusa Ikhlas & Saleem LLP, Brooklyn, NY, for Plaintiffs.

Stephen Matthew Suhovsky, New York City Law Department, New York, NY, for Defendants City of New York, P.O. "John" Gandolfi.

Stephen Matthew Suhovsky, New York City Law Department, New York, NY, for Defendant P.O. Lennoxan Samerson.

**OPINION AND ORDER**

ANDREW L. CARTER, JR., United States District Judge:

**INTRODUCTION**

**\*1** On June 7, 2019, Plaintiff Miguel Ramos filed a complaint against the City of New York and two Police Officers, Lennoxan Samerson and Frank Gandolfi, for false arrest and malicious prosecution in violation of 42 U.S.C. § 1983; failure to intervene in these constitutional violations; violations of his state constitutional rights by the same arrest; and certain other claims that have since been withdrawn. Defendants moved for summary judgement as to Mr. Ramos's federal claims.

After careful consideration, Defendants' motion for summary judgment is GRANTED.

**BACKGROUND**

On the morning of May 16, 2016, Lennoxan Samerson and Frank Gandolfi were working as plain clothes officers in Transit District 4 in the New York City Subway. (Defendants' Responses and Objections to Plaintiff's Statement of Facts in Opposition to Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Joint 56.1"), ECF No. 46, ¶¶ 1-2, 4.) The Officers began their shift on the Northbound 4, 5, 6 platform at 14th Street – Union Square at sometime between 7:30 and 9:00 am. (Joint 56.1 ¶¶ 5-7.) Mr. Ramos was on the subway that day as well.

In the course of their patrol, the Officers saw a man, who will be referred to as Suspect 1, standing suspiciously on the Northbound 6 train platform at 14th Street and leering at women's buttocks. (Joint 56.1 ¶¶ 18-19). Shortly after boarding the same train as Suspect 1, Officer Samerson saw Suspect 1 put his body square against the back of a female passenger and push his groin against her. (Joint 56.1 ¶ 20). Officer Samerson was not able to catch up with the victim to speak with her, (Joint 56.1 ¶ 22), and she and Officer Gandolfi continued to follow Suspect 1 on the train. (Joint 56.1 ¶¶ 22-23, 50-51.) The Officers followed Suspect 1 to a new car on the train, then onto the 42nd Street platform. (Joint 56.1 ¶¶ 26-31.)

For his part, Mr. Ramos denies that he crossed paths with the Officers until directly before his arrest (impliedly denying that he is Suspect 1). He points to the fact that a metrocard in his possession at the time of arrest showed an entry at the 77th Subway Station at 8:06 a.m. and at 42nd Street – Grand Central Station at 8:06 a.m. (Joint 56.1 ¶¶ 9-10.) In his view these times are inconsistent with his being Suspect 1; the Defendants disagree.

However, it is undisputed that Mr. Ramos, the Officers, and a woman, who will be referred to as A.S., boarded the same car of an Uptown 6 train at 42nd street. During the ride, A.S. felt someone touching her buttocks without consent. (Joint 56.1 ¶ 33.) Officer Samerson testified that she observed Mr. Ramos grinding his groin into the buttocks of A.S. (Joint 56.1 ¶ 34.) Mr. Ramos purports to dispute Officer Samerson's account, but, as will be discussed in greater length, fails to create a genuine dispute of fact as to her account.

When A.S. got off the train at the next stop, Officer Samerson followed her and asked her if anything unusual happened on the 6 train. (Joint 56.1 ¶¶ 35-36.) A.S. confirmed that someone had touched her buttocks on the train. (Joint 56.1 ¶ 37.) However, A.S. did not participate in an identification procedure to identify the person who assaulted her. (Joint 56.1 ¶ 42.)

**\*2** Officer Samerson radioed to Officer Gandolfi, who had stayed on the subway with Mr. Ramos. (Joint 56.1 ¶ 38.) On the basis of Officer Samerson's radio, Officer Gandolfi arrested Mr. Ramos. (Joint 56.1 ¶ 39.)

Mr. Ramos was arraigned at New York County Criminal Court and charged with two counts of Forcible Touching and two counts of Sexual Abuse in the Third Degree, to which he plead not guilty. (Joint 56.1 ¶ 45.)

In New York, a person is guilty of Forcible Touching "when such person intentionally, and for no legitimate purpose: forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire...." N.Y. P. L. § 130.52(A)(1). A person is guilty of Sexual Abuse in the Third Degree when "he or she subjects another person to sexual contact without the latter's consent...." N.Y. P. L. § 130.55.

Officer Samerson swore to the facts alleged in the criminal complaint. (Joint 56.1 ¶ 61.) On July 21, 2017, Mr. Ramos's charges were dismissed pursuant to C.P.L. § 30.30 speedy trial provisions. (Joint 56.1 ¶ 46.)

On June 4, 2018, Mr. Ramos filed a complaint against Officers Samerson and Gandolfi, and the City of New York. Therein, Mr. Ramos brought claims for false arrest, excessive force and malicious prosecution in violation of 42 U.S.C. § 1983; deprivation of certain rights secured by Article 1, Section 12 of the New York Constitution; assault and battery; municipal liability by the City of New York; and failure to intervene. Plaintiff subsequently withdrew the excessive force, assault and battery and municipal liability claims. (ECF No. 34 at 2.)

On November 15, 2019, Defendants filed a motion for summary judgment arguing that (1) Plaintiff's false arrest and malicious prosecution claims fail because there was probable cause for his arrest; (2) Plaintiff cannot show the malice element of malicious prosecution; (3) Plaintiff cannot establish the favorable termination element of malicious

prosecution; (4) Defendant Officers are entitled to qualified immunity, and (5) Plaintiff's failure to intervene claim fails as a matter of law. (ECF No. 39.) Defendants also argue that Plaintiff's Fair Trial claim failed. (ECF No. 39 at 17.) Because Plaintiff has disclaimed that he is advancing such a claim, (ECF No. 41 at 21), the Court will not address these arguments. Defendants also argued that were this Court to dismiss the federal claims in this matter, it should not exercise jurisdiction over the remaining state claims. (ECF No. 39 at 24.)

On December 16, 2019, Plaintiff filed an opposition, (ECF No. 41), to which Defendants responded on January 3, 2020, (ECF No. 45).

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. Celotex Corp., 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250. The Court is to believe the evidence of the non-movants and draw all justifiable inferences in their favor, id. at 255, but the non-movants must still do more than merely assert conclusions that are unsupported by arguments or facts, Bellsouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

### 1. False Arrest

**\*3** To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show, *inter alia*, that "the defendant intentionally confined him without his consent and without

justification." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). "[P]robable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman,* 721 F.3d 84, 89 (2d Cir. 2013).

Probable cause exists when the officers have "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir. 2007). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it, as [p]robable cause does not require absolute certainty." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations and citations omitted). "[I]t is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006).

Here, the question of probable cause turns on the accounts of Officer Samerson and A.S. Officer Samerson believes that she saw Mr. Ramos assault A.S. Defendants put forth Officer Samerson's sworn testimony and notes indicating that she witnessed Mr. Ramos assault A.S. Mr. Ramos, in turn, had to adduce evidence of specific facts that create a genuine issue as to Officer Samerson's account. The Court concludes that Mr. Ramos has not done so.

Mr. Ramos fails to demonstrate a genuine issue of fact as to whether Officer Samerson saw Mr. Ramos inappropriately touch A.S. Mr. Ramos does not, for example, offer his own sworn denial that he committed the assault. Rather, he points to an alleged inconsistency in a diagram of the incident drawn by Officer Samerson. Specifically, he argues that a triable issue arises from the fact that Officer Samerson failed to identify where on the diagram the subway door would be at a deposition years later. According to Mr. Ramos, because "Samerson was equivocal about where the platform would have been" she "could not have been watching Ramos commit the crime alleged because Ramos was on the left side of the train". (ECF No. 41 at 12.)

This attempt to create a triable issue fails. Officer Samerson testified that the purpose of the diagram was "to show where people are standing in relation to one another, that's it." (ECF No. 40-2, Samerson Dep. Tr. 65:5-9.) Consistent with her repeated sworn testimony, the diagram shows that Samerson

was standing behind Mr. Ramos, who was in turn behind A.S. Officer Samerson was unwilling to label one side of the diagram as corresponding to the left or right side of the train because "it's been three years, and I didn't make the diagram of what happened in the train car". (ECF No. 40-2, Samerson Dep. Tr. 66:18-25.) But, when asked where the platform would be on her diagram, Officer Samerson testified that the "platform would have been where everyone is by the door". (ECF No. 40-2, Samerson Dep. Tr. 66:11-16.) That is consistent with her repeated sworn testimony of what she observed that day. Officer Gandolfi and A.S. were shown the same diagram, and to the degree of their knowledge, gave testimony consistent with the fact that Officer Samerson was behind Mr. Ramos who was behind A.S. (ECF No. 41 at 6-8.) This does not create a genuine issue of fact as to the reliability of Officer Samerson's account.

*\*4* As to A.S.'s testimony, Mr. Ramos does not dispute that A.S. told Officer Samerson that someone touched her buttocks on the subway without consent. (Joint 56.1 ¶¶ 37, 43.) Nor has he adduced any evidence that a reasonable officer should have doubted A.S.'s account or found it to lack credibility. Rather, he attempts to cast doubt on the weight to be given to A.S.'s account in two ways, both of which fail.

To the extent that Mr. Ramos argues that A.S. not recognizing the inappropriate touching to be a groin creates a material fact as to probable cause, he is wrong. A.S.'s statement confirmed that she had indeed been touched inappropriately and against her will. While what Officer Samerson saw differs from what A.S. felt happening behind her, A.S.'s statement is in no way exculpatory. Rather, she confirmed the gravamen of the charges against Mr. Ramos. *See* N.Y. P. L. § 130.52 (defining Forcible Touching as "when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire."); N.Y. P. L. § 130.55 (defining Sexual Abuse in the Third Degree as when one "subjects another person to sexual contact without the latter's consent....").

Nor is Mr. Ramos's emphasis on the fact that A.S. did not identify him availing. Even without an identification from the victim, Officer Samerson's eye-witnessing of the encounter between A.S. and Mr. Ramos, and A.S.'s statement, are sufficient to support a belief that Mr. Ramos had committed a crime. Officer Gandolfi, who effectuated the arrest, was entitled to rely on Officer Samerson's assessment. *Loria v. Gorman,* 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent

Ramos v. City of New York, Slip Copy (2020)
Case 6:23-cv-01119-DNH-TWD    Document 8    Filed 11/14/23    Page 21 of 54
2020 WL 4041448

significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful.") (Citing *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000).)

Mr. Ramos argues that the question of whether he is Suspect 1 is pivotal in this analysis. "If we accept [his] version of facts that he travelled directly from 14th street to 42nd street without abusing anyone or switching train cars, Samerson must be mistaken about whom she was following." (ECF No. 41 at 9.) But, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York,* 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)). Assuming Mr. Ramos is not Suspect 1, nothing in the record indicates that a mistake of identity by Officer Samerson was unreasonable or in bad faith. To the contrary, Officer Gandolfi testified that Suspect 1 was "wearing the same clothes, same hat, same bag" as Mr. Ramos. (ECF No. 38-2, Ganldolfi's Dep. Tr. 83:11-21.)

Based on the foregoing, the Court concludes there was probable cause for Mr. Ramos's arrest. Because "[t] here can be no federal civil rights claim for false arrest where the arresting officer had probable cause," *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) (citing *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994)), Plaintiff's false arrest claim is DISMISSED. In light of this, the Court need not reach the issue of qualified immunity with respect to false arrest.

### 2. Malicious Prosecution

**\*5** To state a § 1983 claim for malicious prosecution, a plaintiff must show "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir. 2003) (citing *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir. 1996)).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution", and "indictment by a grand jury creates a presumption of probable cause." *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003) (citing *Colon v. City of New York,* 60 N.Y.2d 78, 82 (1983)). That presumption may be rebutted only "by evidence that the indictment was

procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith' ". *Id.* If there was probable cause for an arrest, "[i]n order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir. 1996), as amended (May 21, 1996).

As discussed above, there was probable cause for Mr. Ramos's arrest. Given the absence of exculpatory evidence and other intervening fact to disturb that probable cause, the Court holds there was probable cause for Mr. Ramos' prosecution as well.

Therefore, Mr. Ramos's claim for malicious prosecution is DISMISSED. In light of this, the Court need not reach the favorable termination and malice elements of malicious prosecution, or qualified immunity.

### 3. Failure to Intervene

In light of the Court's holding that there was probable cause for the arrest and prosecution of Mr. Ramos, his claim for failure to intervene necessarily fails too. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir. 1988). Because the Court concludes Mr. Ramos's constitutional rights were not violated by his arrest and prosecution, there was nothing in which to intervene. This claim is therefore DISMISSED.

### 4. Remaining State Claims

Along with the federal claims just discussed, Mr. Ramos brought claims for violation of his rights under the New York State Constitution. Defendants did not ask this Court to evaluate the state law claims on the merits. Instead Defendants asked that, should the Court dismiss the federal claims, the Court decline to exercise jurisdiction over the remaining state claims.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988)). Seeing nothing

**Ramos v. City of New York, Slip Copy (2020)**

2020 WL 4041448

unusual here, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims. Accordingly, Mr. Ramos's state-law claims are DISMISSED.

### CONCLUSION

The Defendants' summary judgment motion is GRANTED. The Clerk is directed to terminate the motion and to enter judgment for the Defendants.

**All Citations**

Slip Copy, 2020 WL 4041448

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3516421
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Anderson JOSEPH, Plaintiff,

v.

JRF INCOME TAX BUSINESS SERVICES, Defendant.

Anderson Joseph, Plaintiff,

v.

McDonald's Restaurant, Defendant.

Anderson Joseph, Plaintiff,

v.

North Shore University Hospital, Defendant.

Anderson Joseph, Plaintiff,

v.

Social Security Office, Defendant.

Anderson Joseph, Plaintiff,

v.

T-Mobile, Defendant.

Anderson Joseph, Plaintiff,

v.

Department of the Treasury Internal
Revenue Service, Defendant.

Anderson Joseph, Plaintiff,

v.

Great Neck Plaza Village of, Defendant.

Anderson Joseph, Plaintiff,

v.

Help to Adjust Counseling,
Anger Management, Defendant.

Anderson Joseph, Plaintiff,

v.

New York State Insurance Fund, Defendant.

Anderson Joseph, Plaintiff,

v.

Capital One Bank, Defendant.

Anderson Joseph, Plaintiff,

v.

Charra Nalini, Defendant.

Anderson Joseph, Plaintiff,

v.

Ctown Supermarket, Defendant.

Anderson Joseph, Plaintiff,

v.

Lantern Diner, Defendant.

21-CV-3869 (PKC) (PK), 21-CV-3870 (PKC)
(PK), 21-CV-3872 (PKC) (PK), 21-CV-3873
(PKC) (PK), 21-CV-3874 (PKC) (PK), 21-
CV-3876 (PKC) (PK), 21-CV-3877 (PKC) (PK), 21-
CV-3878 (PKC) (PK), 21-CV-3879 (PKC) (PK), 21-
CV-3880 (PKC) (PK), 21-CV-3881 (PKC) (PK),
21-CV-3882 (PKC) (PK), 21-CV-3883 (PKC) (PK)
|
Signed 08/10/2021

**Attorneys and Law Firms**

Anderson Joseph, Queens Village, NY, Pro Se.

**MEMORANDUM & ORDER**

PAMELA K. CHEN, United States District Judge:

**\*1** Plaintiff Anderson Joseph filed these 13 *pro se* actions on June 8, 2021 under 42 U.S.C. § 1983 ("Section 1983"). [1] The actions are consolidated solely for the purpose of this Order. Plaintiff's requests to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 are granted. For the reasons discussed below, all 13 Complaints are dismissed.

[1]    The Court notes that in recent months, Plaintiff has filed more than 20 other cases against various individuals, organizations, and entities, all but one of which was dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Joseph v. Supreme Ct. of the State of N.Y.*, No. 21-CV-1685 (PKC) (PK); *Joseph v. Legal Aid Soc'y*, No. 21-CV-1686 (PKC) (PK); *Joseph v. N.Y.C. Police Dep't*, No. 21-CV-1687 (PKC) (PK); *Joseph v. Kirby Forensic Psychiatric Ctr.*, No. 21-CV-1688 (PKC) (PK); *Joseph v. Dep't of Probation*, No. 21-CV-1689 (PKC) (PK); *Joseph v. Nassau Cnty. Probation*, No. 21-CV-1690 (PKC) (PK); *Joseph v. Row Hotel*, No. 21-CV-1691 (PKC) (PK); *Joseph v. Children's Rescue Fund*, No. 21-CV-1692 (PKC) (PK); *Joseph v. Landing Fam. Shelter*, No. 21-CV-1693 (PKC) (PK); *Joseph v. Spring Fam. Residence*, No. 21-CV-1694 (PKC) (PK); *Joseph v. Hollis Fam. Residence*, No. 21-CV-1695 (PKC) (PK); *Joseph v. MTA NYC Transit*, No. 21-CV-1696 (PKC) (PK); *Joseph v. Stark*, No. 21-CV-2136 (PKC) (PK); *Joseph v. Jamaica Hosp.*

*Med. Ctr.*, No. 21-CV-2137 (PKC) (PK); *Joseph v. Mount Sinai Queens*, No. 21-CV-2139 (PKC) (PK); *Joseph v. NYU Langone Med. Bus. Off.*, No. 21-CV-2140 (PKC) (PK); *Joseph v. Queens Hosp. Ctr.*, No. 21-CV-2141 (PKC) (PK); *Joseph v. Wells Fargo Bank*, No. 21-CV-2810 (PKC) (PK); *Joseph v. TD Bank*, No. 21-CV-2811 (PKC) (PK); *Joseph v. Ridgewood Sav. Bank*, No. 21-CV-2812 (PKC) (PK); *Joseph v. CMJ Mgmt. Inc.*, No. 21-CV-2813 (PKC) (PK); *Joseph v. Chase Bank*, No. 21-CV-2814 (PKC) (PK); *Joseph v. Bank of Am.*, No. 21-CV-2816 (PKC) (PK).

## LEGAL STANDARD

A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the compliant are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A document filed *pro se* is to be liberally construed, and "*a pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[A] court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations."). "If [a] liberal reading of the complaint 'gives any indication that a valid claim might be stated,' the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at *2 (E.D.N.Y. Apr. 16, 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

**\*2** Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an IFP action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citation omitted).

## BACKGROUND

In his Complaint against **JRF Income Tax Business Services ("JRF")**, Plaintiff alleges that on February 21, 2020, he called JRF to inquire about his income taxes and spoke with Mr. Joseph Francois, who "d[id]n't have any information about either [Plaintiff] or [his] wife," prompting Plaintiff to ask Mr. Francois if he "has a license to do taxes[.]" (No. 21-CV-3869, Dkt. 1, at 3–4.) Plaintiff alleges that Mr. Francois became "mad" and cursed at him. (*Id.* at 4.) As a result, Plaintiff "felt disrespect and discrimination at the same time" and noted that Mr. Francois's "office is too small for business." (*Id.*) Plaintiff claims that he felt stressed and sad, and he seeks $3 million in monetary damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against **McDonald's Restaurant**, Plaintiff alleges that on May 19, 2016, he went to a McDonald's location in West Hempstead, New York and discovered that "the McDonalds [was] using [his] ideas from [a previous] complaint, things like breakfast all day and a better customer service because before the customer service was very bad." (No. 21-CV-3870, Dkt. 1, at 3–4.) Plaintiff alleges that he was verbally abused and "discriminated for no reason." (*Id.* at 4.) Plaintiff alleges that he felt depressed and sad, and he seeks unspecified monetary damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **North Shore University Hospital ("North Shore")**, located in Manhasset, New York, Plaintiff alleges that while in police custody on December 6, 2013, he was taken to the North Shore emergency department for treatment to a cut on his right hand. (No. 21-CV-3872, Dkt. 1, at 3–4.) Plaintiff alleges that his injury required surgery, but that the doctor did not give him anesthesia, so he "felt the sensation of the pain very badly" and "after the surgery [he] kept on giving blood until [he] arrive[d] to Rikers Island." (*Id.* at 4.) Plaintiff alleges that he suffered from "injuries, stressful depression[,] and sleep disorder," and he seeks $500 million in damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against the **"Social Security Office,"** Plaintiff alleges that on May 23, 2016, March 19, 2021, and other occasions, the Social Security Office discriminated against and disrespected him. (No. 21-CV-3873, Dkt. 1, at 3–4.) Plaintiff alleges that he experienced bad customer service, including waiting "1 to 2 hours over the phone" before being informed that he did not qualify for benefits and waiting "for 8 hours" at the office without anyone serving him. (*Id.* at 3–

4.) Plaintiff alleges that he experienced depression and pain, and he seeks unspecified money damages. (*Id.* at 4–5.)

In his Complaint against **T-Mobile**, Plaintiff alleges that during a phone call on May 19, 2016, T-Mobile customer service "treat[ed] [him] as [he] sa[id] in [his previous] complaint and us[ed] [his] idea for a better service and [he] need[s] to get paid for that." (No. 21-CV-3874, Dkt. 1, at 3–4.) Plaintiff alleges that he experienced depression, stress, and emotional pain, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

**\*3** In his Complaint against the **Department of Treasury Internal Revenue Service ("IRS")**, Plaintiff alleges that since 2012, a Florida-based company did his taxes, so he is not responsible for them, and "any time [he] called IRS over the phone the agents disrespected [him] because they d[idn]'t have any answers for [him]." (No. 21-CV-3876, Dkt. 1, at 4.) Plaintiff alleges that the IRS charged him $5,000 to "pay back," made him wait "1 to 2 hours" on the phone, and "abuse[d] [him] verbally [and he] felt discriminated and [dis]respted." (*Id.*) Plaintiff alleges that felt depression and stress, and he seeks $100 million in damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against **"Great Neck Plaza Village Of"** ² **("Great Neck")**, Plaintiff alleges that on August 10, 2016, he was verbally abused and "discriminated at work as a community organizer" because a driving instructor for the "city government office in Great Neck hung up the phone in [his] face several times" when he was "telling them ... that [Great Neck] was not safe to drive." (No. 21-CV-3877, Dkt. 1, at 3–4.) Plaintiff alleges that he felt depressed and verbally abused, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

2    The Village of Great Neck is located in Nassau County, New York. *See* https://www.greatneckvillage.org/ (last visited July 27, 2021).

In his Complaint against **Help to Adjust, Anger Management ("Help to Adjust")**, a private counseling center, ³ Plaintiff alleges that his probation officer sent him for weekly counseling sessions, including on June 29, 2017, where the counselor asked questions about his life and December 6, 2013 arrest, and he was required to get drug tested. (No. 21-CV-3878, Dkt. 1, at 3–4.) Plaintiff states that he "felt discriminated [against] because [the counselor] was

using [him] to better her job position and [he] didn't get paid for it[,] and after her interview with [him], [he] always felt dizziness and emotional stress." (*Id.* at 4.) Plaintiff alleges that he felt stress, and he seeks $3 million in damages for pain and suffering. (*Id.* at 5.)

3    Help to Adjust is a counseling center that offers general therapy, marriage and relationship counseling, and anger management counseling. *See* Help to Adjust Counseling & Anger Management, http://www.valleystreamtherapist.com/ (last visited on July 27, 2021).

In his Complaint against **New York State Insurance Fund ("NYSIF")**, Plaintiff alleges that on June 6, 2016 and April 28, 2021, he was discriminated against and verbally abused over the phone by an NYSIF employee, who denied him information. (No. 21-CV-3879, Dkt. 1, at 3–4.) Plaintiff alleges that he felt depression, stress, and emotional pain, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **Capital One Bank ("Capital One")**, Plaintiff alleges that from 2015 until April 9, 2021, including on November 5, 2020, "Capital One Bank [was] always changing [his] balance and took [his] money illegally." (No. 21-CV-3880, Dkt. 1, at 3–4.) Plaintiff alleges that he called customer service to "let them know" and they made him wait "a good 1 to 2 [hours]" and "discriminate[d] [against him] over the phone." (*Id.* at 4.) Plaintiff alleges that he felt depression and stress, and he seeks $500 million in money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **Charra Nalini**, Plaintiff alleges that he was injured in a car accident while he was a driving instructor at Nalini's driving school, and that on May 26, 2016, Nalini, "refused to give [him] information about [ ] car insurance." (No. 21-CV-3881, Dkt. 1, at 3–4.) Plaintiff also alleges that he called Nalini to ask for his last paycheck, but she hung up on him. (*Id.* at 4.) Plaintiff seeks unspecified money damages for pain and suffering. (*Id.* at 5.)

**\*4** In his Complaint against **CTown Supermarket ("CTown")**, Plaintiff alleges that on June 9, 2021, ⁴ employees at a CTown located in Jamaica, New York, verbally abused, threatened, and treated him badly, prompting Plaintiff to call the police "for discrimination." (No. 21-

CV-3882, Dkt. 1, at 3–4.) Plaintiff alleges that he felt stress and "emotional injury" and that CTown "need[s] to stop experiments on [him]." (*Id.*) Plaintiff seeks $500 million in money damages for discrimination. (*Id.* at 5.)

4    The Court notes that this action was filed on June 8, 2021, the day *before* this alleged event.

Finally, in his Complaint against **Lantern Diner**, located in West Hempstead, New York, Plaintiff alleges that on June 6, 2016, he "went to Lantern Diner and [ ] saw the Diner servers treat [him] as [he said] in [his] complaint, but the Diner us[ed] [his] idea and [he] need monetary [sic] for it." (No. 21-CV-3883, Dkt. 1, at 3–4.) Plaintiff attaches materials related to a state court action in which he alleges Lantern Diner discriminated against him. (Dkt. 1-2.) Plaintiff alleges that he felt depression and stress, and he seeks unspecified money damages for discrimination and pain and suffering. (No. 21-CV-3883, Dkt. 1, at 4–5.)

**DISCUSSION**

**I. 42 U.S.C. § 1983**
Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). To state a claim under Section 1983, a plaintiff must allege that the conduct at issue was "committed by a person acting under color of state law" and that the conduct deprived the plaintiff "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d

Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted). However, the Second Circuit has identified three main tests for determining when the actions of a "nominally private entity are attributable to the state" for purposes of Section 1983 liability:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (citations omitted).

**\*5** Here, Plaintiff's claims against JRF, McDonald's, North Shore, T-Mobile, Help to Adjust, Capital One, Charra Nalini, CTown and Lantern Diner fail because they are all private entities beyond the reach of Section 1983 liability. Plaintiff does not allege that any of these entities acted under color of state law, and there are no facts in the Complaints that demonstrate, even on a liberal reading, that the actions of these Defendants may be "fairly attributable" to the state. Therefore, the Complaints must be dismissed. *See Boothe v. Rossrock Funds II LP*, No. 16-CV-900 (PKC), 2017 WL 2271360, at \*8 (E.D.N.Y. May 23, 2017) (dismissing Section 1983 claims against private corporations, including a bank, because none were "State actors for purposes of 42 U.S.C. § 1983" and the amended complaint "utterly fail[ed]

to allege that [the] [d]efendants' actions are attributable to the State" (citation omitted)); *Anthony v. Med. Staff at Inst.*, 409 F. Supp. 3d 102, 105 (E.D.N.Y. 2016) ("A private hospital is generally not considered a state ... actor.") (collecting cases); *Schneiderman v. N. Shore Univ. Hosp.*, No. 13-CV-5939, 2013 WL 6564184, at *2 (E.D.N.Y. Dec. 11, 2013) ("North Shore University Hospital is a private hospital facility.") [5]; *Brown v. Chase Bank*, No. 13-CV-5309 (WFK) (LB), 2013 WL 5537302, at *2 (E.D.N.Y. Oct. 7, 2013) (dismissing complaint against private corporations, including banks, and private individuals who "do not act under color of state law within the meaning of 42 U.S.C. § 1983"); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) (summary order) ("[P]rivate actors and institutions, such as the hospitals, ... named as defendants in [the plaintiff]'s original complaint, are generally not proper § 1983 defendants because they do not act under color of state law." (citing *Sullivan*, 526 U.S. at 49–50)).

[5]    North Shore is part of the Northwell Health system and is the teaching hospital for the Donald and Barbara Zucker School of Medicine at Hofstra/Northwell. *See* About Us, https://nsuh.northwell.edu/about (last visited July 27, 2021).

Furthermore, Plaintiff does not provide any facts to support his conclusory allegations of discrimination by these Defendants. A complaint that offers nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or that "tenders naked assertions devoid of further factual enhancement" is insufficient. *Iqbal*, 556 U.S. at 678 (alteration, internal quotation marks, and citations omitted). Accordingly, even on a liberal reading, these 13 Complaints must also be dismissed for failing to state a claim.

In addition, Plaintiff's medical malpractice claim against North Shore fails because the Court does not have jurisdiction over this state law claim. "A claim sounds in medical malpractice when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.' " *Sha v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 99-CV-3233 (AKH), 2000 WL 1760883, at *1 (S.D.N.Y. Nov. 30, 2000) (quoting *Weiner v. Lenox Hill Hospital*, 673 N.E.2d 914 (1996)), *aff'd sub nom. Sha (Engelhardt) v. Mem'l Sloan Kettering Cancer Ctr.*, 29 F. App'x 788 (2d Cir. 2002). Plaintiff's Complaint against North Shore relates to medical treatment provided to him and therefore can be read as a claim for medical malpractice.

Medical malpractice claims "arise under state law, and a federal court generally will not have original jurisdiction over the[se] claims unless complete diversity exists," meaning "no plaintiff and no defendant are citizens of the same state." *Urena v. Wolfson*, No. 09-CV-1107 (KAM) (LB), 2010 WL 5057208, at *13 (E.D.N.Y. Dec. 6, 2010). Here, Plaintiff and North Shore are both citizens of New York; thus complete diversity and diversity jurisdiction do not exist. *See* 28 U.S.C. § 1332.

Finally, Plaintiff's actions against the Social Security Office, IRS, Great Neck, and NYSIF must be dismissed because allegations that Plaintiff was treated poorly, disrespected, or received bad customer service simply do not rise to the level of federal constitutional or statutory violations. Furthermore, Plaintiff does not provide any facts to support his conclusory allegations of discrimination by these Defendants. As previously stated, a complaint that offers nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or that "tenders naked assertions devoid of further factual enhancement" is insufficient. *Iqbal*, 556 U.S. at 678 (alteration, internal quotation marks, and citations omitted). Accordingly, even on a liberal reading, these Complaints must be dismissed for failing to state a claim upon which relief can be granted.

## II. Denial of Leave to Amend

**\*6** The Court has a duty to give a *pro se* plaintiff the opportunity to amend his complaint if a "liberal reading of the complaint 'gives any indication that a valid claim might be stated[.]' " *Nelson-Charles*, 2019 WL 1675999, at *2 (quoting *Cuoco*, 222 F.3d at 112). However, where it would be futile to do so because the claims are fundamentally invalid, the Court may deny the plaintiff this opportunity. *See Cuoco*, 222 F.3d at 112 ("The problem with [the plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."); *accord Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order). The Court finds that it would be futile to allow Plaintiff to re-plead the claims asserted in these 13 actions, and therefore declines to grant him the opportunity to file amended complaints in any of these actions.

## III. Filing Injunction

The federal courts have limited resources. Frequent frivolous filings diminish the ability of the federal courts to manage their dockets for the efficient administration of justice. "The district courts have the power and the obligation to

protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks and citations omitted).

In light of Plaintiff's litigation history, which includes, to date, the filing of over 33 complaints, all but one of which have been dismissed *sua sponte*, he is ORDERED TO SHOW CAUSE by written Affirmation, **within 14 days** of the entry of this Order, why he should not be barred from filing any future IFP actions in the United States District Court for the Eastern District of New York without first obtaining permission from the Court to do so.

If Plaintiff fails to show cause **within 14 days** of the entry of this Order, or should Plaintiff's affirmation fail to set forth good cause why an injunction should not be entered, Plaintiff will be barred from filing any further IFP actions in this Court without first obtaining permission from the Court. *See Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing 'vexatious, harassing or duplicative lawsuits,' courts may impose sanctions, including restrictions on future access to the judicial system." (citation omitted)); *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) ("With respect to civil litigation, courts have recognized that the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints.").

## CONCLUSION

The Complaints filed in the above-captioned 13 cases are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is ORDERED TO SHOW CAUSE by written Affirmation, **within 14 days** of the entry of this Order, why he should not be barred from filing any further *in forma pauperis* actions in this Court without first obtaining permission from the Court to do so. Plaintiff is directed to file only one Affirmation in response to the Court's order to show cause and should reference the following case number on the face of the Affirmation: 21-CV-3869.

All further proceedings shall be stayed until Plaintiff's time to file his written Affirmation has expired.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore IFP status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

## All Citations

Slip Copy, 2021 WL 3516421

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 519296
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Allen ALBERGOTTIE, Plaintiff,

v.

NEW YORK CITY; Martin Horn, N.Y.
City Doc. Commissioner; Glenn Goord,
N.Y. State, Docs. Commissioner; Robert J.
Derrison, N.Y. State Div. of Parole, Defendants.

No. 08 Civ. 8331(SHS).
|
Feb. 15, 2011.

*OPINION & ORDER*

SIDNEY H. STEIN, District Judge.

**\*1** *Pro se* plaintiff Allen Albergottie brings this action pursuant to 42 U.S.C. § 1983 challenging the imposition and enforcement of post-release supervision ("PRS") by the New York State Department of Correctional Services (the "State DOCS"), by the New York State Division of Parole, and by the New York City Department of Corrections (the "City DOC"). Specifically, Albergottie contends that the imposition of PRS by anyone other than a judge violates the Due Process Clause of the Fourteenth Amendment by depriving defendants in criminal proceedings of their constitutional right to be sentenced by a judge. Further, Albergottie alleges that his detention pursuant to a parole warrant was illegal and a violation of his Fourth Amendment rights. Defendants Glenn Goord, former Commissioner of State DOCS, and Robert J. Derrison, former Chairman of the State Division of Parole (collectively the "State Defendants"), have moved pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants New York City and Martin Horn, Commissioner of New York City Department of Corrections (collectively the "City Defendants"), have moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings.

Because this Court finds that (1) the State Defendants are entitled to qualified immunity and (2) that Albergottie has failed to state a plausible claim for relief against the City Defendants, the defendants' respective motions to dismiss the complaint are granted.

## I. BACKGROUND

### A. *Factual Background*

The following facts are taken from the complaint and are assumed to be true for the purposes of this motion. On November 11, 2001, Albergottie was arrested for burglary, assault, and possession of burglar's tools. (Compl.¶ 1.) Albergottie pled guilty and received a five-year determinate sentence. (Compl.¶ 1.) During his plea allocution and sentencing, the judge did not inform Albergottie that a mandatory period of PRS would follow his determinate sentence. (Compl.¶ 1.) Albergottie's commitment sheet also did not reflect the imposition of the mandatory PRS. (Ex. A to Compl.) [1]

[1]    Albergottie appends several documents to his complaint. The "Sentence and Commitment" sheet will be referred to as "Exhibit A," and the March 4, 2008 "State of New York—Board of Parole Preliminary Violation Hearing Decision and Summary" will be referred as "Exhibit B."

Albergottie was conditionally released from incarceration and placed on PRS on February 10, 2006. (Pl.'s Mem. in Opposition to Motion to Dismiss I ¶ 27.) Prior to his release, Albergottie met with a parole counselor, and it is at this time that Albergottie alleges he first learned of his mandatory period of PRS. (Compl.¶ 2.) Although Albergottie objected to the PRS, he was told that "if I didn't sign [the PRS] papers that I will not be allowed to go home on my conditional release date." (*Id.*) Albergottie filed a grievance, which was "never answered," and for two years he reported to his parole officer. (*Id.* ¶¶ 2–3.)

Two years later, on February 14, 2008, Albergottie was arrested for forgery. (Compl.¶ 3.) He posted bail, but was not released because a parole warrant had been lodged by the State Division of Parole. (Compl. ¶ 3; Ex. B to Compl.) Subsequently, Albergottie filed a petition for a writ of habeas corpus, which the New York Supreme Court, Bronx County, granted on May 2, 2008. (Compl.¶¶ 3–4.) Although the parole warrant was vacated, Albergottie remained detained because the bail on his forgery charge was "raised from $3,500 to $10,000." (*Id.* ¶ 4.)

B. *Legal History*

**\*2**  In 1998, the New York legislature enacted "Jenna's Law," which requires the imposition of PRS "as a mandatory follow-up period to a determinate sentence for violent felony offenders." *State v. Myers,* 22 Misc.3d 809, 812–13, 870 N.Y.S.2d 757 (Sup.Ct. Albany Cty 2008); *see also* N.Y. Penal § 70.45 (1999). For several years after the enactment, if the sentencing judge did not impose PRS at sentencing, the State DOCS imposed it administratively. *See Myers,* 22 Misc.3d at 811, 812–13 (noting that the State DOCS estimated that it had administratively imposed PRS on over ten thousand defendants). New York appellate courts have also consistently upheld the administrative imposition of PRS in the absence of the imposition of PRS by the sentencing court. *See Collins v. State,* 69 A.D.3d 46, 50, 887 N.Y.S.2d 400 (4th Dep't 2009) (citations omitted).

Then, on June 9, 2006, the United States Court of Appeals for the Second Circuit held that the State DOCS' imposition of extra-judicial sentences of PRS violated federal law. *Earley v. Murray,* 451 F.3d 71, 76 (2d Cir.2006). Following the Second Circuit's decision in *Earley,* three of the four appellate departments in New York continued to uphold the administrative imposition of PRS. *Myers,* 22 Misc.3d at 813 n. 9 (listing several cases from the first, third, and fourth appellate departments (citations omitted)).

In April 2008, the New York Court of Appeals decided *Garner v. N.Y. State Dep't Corr. Servs.,* 10 N.Y.3d 358, 859 N.Y.S.2d 590 (2008) and *People v. Sparber,* 10 N.Y.3d 457, 859 N.Y.S.2d 582 (2008), which held that PRS imposed by anyone other than a judge violated New York state law. *See Garner,* 10 N.Y.3d at 362. The New York state legislature subsequently passed Corrections Law § 601–d to "provide a mechanism for courts to consider resentencing defendants serving determinate sentences without court-ordered post-release supervision terms." *People v. Williams,* 14 N.Y.3d 198, 206, 899 N.Y.S.2d 76 (2010).

C. *Procedural History*

In August of 2008, Albergottie filed this section 1983 complaint alleging that defendants violated his constitutional rights when they administratively imposed and enforced a five-year term of PRS on him. (Compl.¶¶ 1–5.) He seeks compensatory and punitive damages for the two years he served on supervised release. (*Id.* ¶ 5.)

## II. STANDARD OF REVIEW

A. *Rule 12(b)(1) Standard*

On a motion to dismiss a complaint for lack of subject matter jurisdiction, " 'the party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists.' " *Sharkey v. Quarantillo,* 541 F.3d 75, 82 (2d Cir.2008) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). While the court must accept as true all material facts alleged the complaint, in resolving challenges to subject matter jurisdiction, the court may look beyond the pleadings in order to satisfy itself that it has the authority to hear the action. *See Filetech S.A. v. Fr. Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998) (quotation and citation omitted).

B. *Rule 12(b)(6) and 12(c) Standards*

**\*3**  For purposes of a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) or a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *See Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). To survive either motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). For a claim to be plausible, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible [its] complaint must be dismissed." *Id.*

When considering a Rule 12(b)(6) or 12(c) motion to dismiss against a *pro se* plaintiff—such as Albergottie—this Court may consider as true facts taken not just from plaintiff's complaint and the accompanying exhibits but also plaintiff's opposition memoranda. *Baskerville v. Blot,* 224 F.Supp.2d 723, 728 (S.D.N.Y.2002); *see also Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002). Moreover, a *pro se* plaintiff's complaint must be liberally construed to raise the strongest claims that the allegations suggest. *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006); *Phillip v.. Univ. of Rochester,* 316 F.3d 291, 293–94 (2d Cir.2003); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). "However, a *pro se* party's bald assertions of a constitutional violation without any factual predicate

cannot survive even the most liberal standard accorded a Rule 12(b)(6) motion." *Baskerville,* 224 F.Supp.2d at 728 (citations omitted).

## III. ANALYSIS

A. *The Motions to Dismiss*

The State Defendants assert a broad array of arguments to dismiss the complaint as to them. Because the State Defendants filed a motion to dismiss pursuant to Rule 12(b)(1) challenging this Court's jurisdiction, the Court will consider the jurisdictional issue first. The Court will then assess the State Defendants' argument that Albergottie's claim is barred by the statute of limitations. The Court will finally turn to the State Defendants' assertion of qualified immunity. Because the Supreme Court has " 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation,' " *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)), and because the State Defendants are correct that they are entitled to qualified immunity from being sued based on plaintiff's claims, the Court need not assess the remaining arguments raised in support of the Rule 12(b)(6) motion to dismiss. [2]

> [2]    Although the State Defendants have attached documents to their Rule 12(b)(6) motion to dismiss, the Court is not considering them because the qualified immunity defense can be analyzed "based on facts appearing on the face of the complaint." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004).

1. *Eleventh Amendment*

**\*4** Albergottie asserts claims for damages against Goord, the former Commissioner of State DOCS, and Derrison, the former Chairman of the State Division of Parole, in their individual capacities. [3] The State Defendants argue that the Eleventh Amendment bars these claims because Albergottie is seeking damages for the operation of Penal Law § 70.45, which makes PRS mandatory for certain defendants, and this makes the state the real party in interest. (State Defs.' Mem. in Support of Motion to Dismiss at 22–23.)

> [3]    Although Albergottie seeks damages against Derrison in his official capacity, *see* Pl.'s Opp. I ¶ 13, the Eleventh Amendment bars suits for

damages alleged against a state official in his official capacity, *see Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.1993) (citing *Hafer v. Melo,* 502 U.S. 21 (1991)). Therefore, Albergottie's claims for damages alleged against Derrison in his official capacity are dismissed.

The Court disagrees. Albergottie is not arguing that Penal Law § 70.45 itself violates constitutional rights; rather, Albergottie argues that the enforcement by the State Defendants was in violation of his constitutional rights. (Compl.¶¶ 1–5). The Eleventh Amendment does not bar claims alleged against a state official in his individual capacity even though the official is acting in accord with state law. *See Hafer,* 502 U.S. at 28–29 (holding that the immunity available to state officials for individual capacity suits for retrospective damages is qualified immunity); *Berman Enters.,* 3 F.3d at 606 (stating that even though the state will reimburse state officials, the payment "does not make the state the real party in interest").

Therefore, the Rule 12(b)(1) motion to dismiss the claims against both State Defendants Derrison and Goord in their individual capacities is denied. [4]

> [4]    In his complaint Albergottie only seeks money damages, but in his extensive opposition papers, Albergottie seeks "injunctive" and "declaratory" relief. (Pl.'s Opp. I ¶¶ 5, 15). This Court declines to construe Albergottie's opposition papers as an amended complaint, and also notes that either relief appears unnecessary because Albergottie's PRS was vacated. *See People v. Albergottie,* Index No. 6805–01 (Sup.Ct. N.Y. Cty Aug. 4, 2008).

2. *Statute of Limitations*

As a threshold matter, the State Defendants argue that Albergottie's claim accrued in 2002 and is barred by the applicable three year statute of limitations. (State Defs.' Supp. at 3.) Because there is no federal statute of limitations for actions arising under section 1983, federal courts apply the statute of limitations period for personal injury actions in the forum state, which in New York is three years. *Ormisten v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997). However, the date of accrual is governed by federal law. *Id.*

The State Defendants contend that Albergottie's claim accrued in 2002 because Albergottie either knew or had reason to know that PRS had been imposed administratively when the State DOCS received him into custody in September

2002. However, courts in this circuit have uniformly held that pursuant to *Heck v. Humphrey* the claims of plaintiffs such as Albergottie do not accrue until the underlying sentence is invalidated, or, in this case, until Albergottie's petition for writ of habeas corpus was granted. *See, e.g., Ruffins v. Dep't of Corr. Servs.,* 701 F.Supp.2d 385, 393–97 ("plaintiff's § 1983 cause of action did not accrue until September 17, 2008, when the state court re-sentenced him without any PRS term"); *Santiago v. Fischer,* No. 09–CV–1383, 2009 WL 3852001, at *3 (E.D.N.Y. Nov. 18, 2009) (plaintiff's section 1983 claim did not accrue until his habeas petition was granted); *Scott v. Fischer,* No. 07 Civ. 11303, 2009 WL 928195, at *4 (S.D.N.Y. Mar. 30, 2009) (same), *affirmed by* 616 F.3d 100 (2d Cir.2010); *cf. Heck v. Humphrey,* 512 U.S. 477, 489–90 (1994) (section 1983 claim for damages which questions the validity of a conviction or sentence does not "accrue until the conviction or sentence has been invalidated"). Because plaintiffs such as Albergottie were under no obligation to "bring a habeas petition to vacate [their] PRS" when they were admitted into DOCS custody, *Scott,* 2009 WL 928195, at *4, the accrual date of Albergottie's claim is not in 2002 but rather in 2008 when his habeas petition was granted, (Compl.¶¶ 3–4).

**\*5** Albergottie filed this complaint in 2008, less than three years after his habeas petition was granted, and, therefore, his claim is not time barred.

### 3. Qualified Immunity

The doctrine of qualified immunity protects governmental officials " ' from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson,* 129 S.Ct. at 815 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). To determine whether a right is "clearly established," courts in this Circuit assess whether: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003) (internal quotations and citations omitted). Qualified immunity applies regardless of whether an official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law or fact." *Pearson,* 129 S.Ct. at 815. Moreover, whether the law was clearly established must be evaluated at the time of the conduct at issue. *See Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir.2003).

The State Defendants contend that they are entitled to qualified immunity for their imposition and enforcement of Albergottie's PRS because the administrative imposition of extrajudicial PRS did not violate clearly established constitutional rights pre- or post-*Earley.* In June 2006, the Second Circuit held that the administrative imposition of PRS by the State DOCS, when not imposed by a judge, violated the constitutional rights of criminal defendants. *See Earley,* 451 F.3d at 76. The Second Circuit has subsequently held that the imposition and enforcement of extra-judicial PRS by the State Defendants pre-*Earley* did not violate a clearly established constitutional right. *See Scott v. Fischer,* 616 F.3d 100, 107 (2d Cir.2010) ("[W]e conclude that it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause."). Therefore the State Defendants are entitled to qualified immunity for the imposition and enforcement of extra-judicial PRS during the pre-*Earley* period.

> This Court has also previously held that post-*Earley,* but prior to the New York State Court of Appeals decision in *Garner* and *Sparber* in April 2008, state officials are entitled to qualified immunity. *See Hardy v. Fischer,* No. 08 Civ. 2460, 2010 WL 4359229, at *2–3 (S.D.N.Y. Nov. 3, 2010). Because there was "considerable confusion in the New York State courts as to the applicability of the Second Circuit's decision," a reasonable state official would not realize that the continued enforcement of extra-judicial PRS would violate a constitutional right. *Id.* Therefore the State Defendants are entitled to qualified immunity for the post-*Earley* but pre-*Sparber/ Garner* enforcement of extra-judicial PRS.

**\*6** Although PRS had already been imposed on Albergottie when he was released in February 2006, the State Defendants continued to enforce Albergottie's conditions of PRS after the New York Court of Appeals decided *Sparber* and *Garner* in April 2008. Albergottie was detained by the City pursuant to the parole warrant until May 2008 when the Supreme Court, Bronx County, granted Albergottie's habeas petition and vacated the warrant. (Compl. ¶¶ 3–4; Pl.'s Opp. I at ¶ 10.) Thus, this Court must determine whether a reasonable state official would have known that the continued enforcement of the already imposed extra-judicial PRS violated a clearly established constitutional right after *Sparber* and *Garner.*

The Court finds that the defendants are entitled to qualified immunity because until June 30, 2008, a reasonable State DOCS or parole official would not realize that he had a duty or authority to seek the correction of a procedurally

2011 WL 519296

deficient but otherwise valid and statutorily required period of PRS. Even though the New York Court of Appeals had declared the administrative imposition of extra-judicial PRS in violation of New York State law, the *Sparber* court stated that this was "only a procedural error, akin to a misstatement or clerical error, which the sentencing court could easily remedy." *Sparber,* 10 N.Y.3d at 466. It was only when the New York state legislature passed Correction Law § 601–d, on June 30, 2008, that the State Defendants were under any duty to "notify sentencing courts that PRS had not been properly imposed in certain cases ... and to have these defendants returned to the original sentencing courts for modification of their sentences." *Williams,* 14 N.Y.3d at 208; *see also Scott,* 616 F.3d at 108 n. 5 (stating that it was not until the passage of Corrections Law § 601–d that an "affirmative duty" was imposed upon government officials to seek resentencing); *cf.* Penal § 70.45.

Because there was no duty to affirmatively revoke, alter enforcement, or seek the correction of extra-judicial PRS sentences, a reasonable state official would not realize that the continued enforcement of a the statutorily required period of PRS was in violation of clearly established constitutional rights. This Court finds that the State Defendants are entitled to qualified immunity for the period between April 2008 and June 30, 2008. [5]

[5]    In his first memoranda in opposition, Albergottie included Brian Fischer, the Commissioner of State DOCS appointed on January 1, 2007, as if he were a defendant. (Pl.'s Opp. I ¶ 11.) He is not; if he were, he would similarly be entitled to qualified immunity.

Therefore, all claims against the State Defendants are dismissed. [6]

[6]    Albergottie has another basis for his request for damages based on the unconstitutional imposition of PRS because the trial court also failed to advise Albergottie of the mandatory PRS in his plea colloquy. (Pl.'s Opp. I ¶ 25.) In 2005, the New York Court of Appeals found that a trial court's failure to discuss the mandatory period of PRS was a violation of a defendant's procedural due process rights, *People v. Catu,* 4 N.Y.3d 242, 244–45, 792 N.Y.S.2d 887, 825 N.E.2d 1081 (2005), but the court found that this breach of the trial court's constitutional duty requires the trial

court to vacate the plea, *id.* A reasonable State DOCS or parole official would not understand that the continued enforcement of an otherwise valid period of PRS was in violation of a releasee's constitutional rights because the trial court had violated the releasee's procedural due process rights during a plea colloquy held in 2002, some three years prior to the decision in *Catu.* Therefore, the State Defendants would be entitled for qualified immunity.

B. *Motion for Judgment on the Pleadings*

1. *Heck v. Humphrey Favorable Termination Rule*
Albergottie seeks damages for the detention, from February until May 2008, by the City DOC based on an "illegal parole warrant." (Pl.'s Mem. in Opposition to Motion to Dismiss II ¶¶ 9.) The City Defendants argue that *Heck v. Humphrey* bars Albergottie's section 1983 action for damages because they claim that this period of detention was credited toward Albergottie's sentence for a separate forgery offense and that sentence has not been invalidated.

**\*7** *Heck v. Humphrey* states that a section 1983 claim for damages which questions the validity of an conviction or a sentence does not arise until the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. 477–78. However, before instituting his suit for damages flowing from the detention pursuant to the parole warrant, Albergottie filed a petition for a writ of habeas corpus, that petition was granted, and the parole warrant was vacated. (Compl. ¶ 3–4; Pl.'s Opp. I ¶¶ 10, 31.) For the purposes of *Heck v. Humphrey,* Albergottie has shown that his detention was invalid and his section 1983 claim for damages related to the detention is cognizable. At most, the jail time credit limits any damages available to Albergottie, but it does not raise a bar to Albergottie's claim.

2. *False Arrest, False Imprisonment, and Malicious Prosecution Claims*
The City Defendants argue that Albergottie cannot sustain his false arrest, false imprisonment, or malicious prosecution claims arising from his detention in 2008 pursuant to a parole warrant because that detention is privileged. To establish a false arrest or imprisonment claim under either New York State law or section 1983, a plaintiff must show that: "(1) the

defendant intended to confine the plaintiff, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Santiago,* 2009 WL 3852001, at *7 (citing *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) ("The elements of a claim for false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." (quoting *Hygh v. Jacobs,* 961 F.3d 359, 366 (2d Cir.1992))). Only the fourth element —whether the confinement was privileged—is at issue here, and the Court agrees that the confinement was privileged.

If the confinement is made pursuant to an arrest warrant that is "valid on its face," *Santiago,* 2009 WL 3852001, at *7, and supported by probable cause, then the confinement is privileged and a plaintiff's false arrest or imprisonment claim is foreclosed, *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996); *Broughton v. State of New York,* 37 N.Y.2d 451, 457–58, 373 N.Y.S.2d 87, 335 N.E .2d 310 (1975).

Albergottie was confined on the basis of a parole warrant, and in New York the issuance of parole warrants are supported by "reasonable cause:"

> If a parole officer having charge of a ... person released to post-release supervision ... shall have reasonable cause to believe that such a person lapsed into criminal ways or company, or has violated one or more conditions of ... post-release supervision ... a warrant may be issued for the retaking of such person for his temporary detention ....

**\*8** N.Y. Exec. § 259–i(3)(a)(i). A parole warrant supported by reasonable cause is sufficient to privilege the arrest and confinement even if the parole warrant is later declared invalid. *See Hardy,* 701 F.Supp.2d at 612–613 (finding that compliance with N.Y. Exec. § 259–i(3)(A)(i) is sufficient to privilege the arrest and imprisonment "even if the PRS was wrongly-imposed"); *Santiago,* 2009 WL 3852001, at *7 ("Furthermore, [a]n arrest based on a facially valid warrant, which results in an unlawful detention, does not give rise to an action for false arrest even though the warrant was erroneously or improperly issued." (quotation and citation

omitted)); *cf. Alvardo v. City of New York,* 482 F.Supp.2d 332, 337 n. 2 (S.D.N.Y.2007).

There are no allegations that the parole warrant was facially invalid or non-compliant with N.Y. Exec. § 259–i(3)(A)(i). In fact, Albergottie was originally detained at the City DOC because of his arrest for forgery. (Compl.¶ 3.) The arrest for forgery is more than sufficient to establish reasonable cause for a parole warrant, and without any allegations that the warrant was facially invalid or lacking in reasonable cause, Albergottie's detention on the parole warrant is privileged and he fails to state a plausible claim for false arrest or imprisonment.

For similar reasons, Albergottie's claim for malicious prosecution also fails. To establish a claim for malicious prosecution, a plaintiff must show: "(i) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (ii) the termination of the proceeding favor of the plaintiff; (iii) the absence of probable cause for the criminal proceeding; and (iv) actual malice." *Knowles v. Johnson,* No. 08 Civ. 4741, 2010 WL 1050973, at *4 (E.D.N.Y, Mar. 23, 2010) (citing *Rothstein v. Carriere,* 373 F.3d 275, 292–94 (2d Cir.2004)). Although Albergottie has shown that the proceeding against him for the parole violation was terminated in his favor when his petition for writ of habeas corpus was granted, (Compl. ¶ 4; Pl.'s Opp. I ¶ 10), he has alleged no facts to dispute a finding of reasonable cause or to dispute the finding of probable cause by the parole board in Albergottie's preliminary hearing, (Ex. B to Compl.). Because Albergottie bears the burden to prove that the prosecution was not supported by probable cause, he fails to state a claim for malicious prosecution. *See Broughton,* 37 N.Y.2d at 457–49 (finding that the plaintiff bears the burden to show want of probable cause to support a malicious prosecution claim).

Therefore, Albergottie's claims for false arrest, false imprisonment, and malicious prosecution are dismissed.

### 3. Personal Involvement

To state a claim pursuant to section 1983, a plaintiff must allege (1) that the challenged conduct taken by a person acting under color of state law and (2) that that conduct deprived the plaintiff of a right secured by the Constitution or federal law. *See Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005); *see also Santiago,* 2009 WL 3852001 at *7. Because section 1983 "imposes liability for 'conduct which subjects, or causes to be subjected' the complainant to a deprivation of rights secured by the constitution and laws," *Williams v. Smith,*

781 F.2d 319, 323 (2d Cir.1985) (quoting *Rizzo v. Goode,* 423 U.S. 362, 370–71 (1976) (additional quotations and citations omitted)), the " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award for damages under § 1983,' " *Schomo v. City of New York,* 579 F.3d 176, 184 (2d Cir.2009) (quoting *Colon v. Coughlin,* 58 F.3d 863, 873 (2d Cir.1995)).

**\*9** Although the personal involvement of a defendant is a question of fact, *see Williams,* 781 F.2d at 323, Albergottie has failed to allege any facts regarding the involvement of City Defendant Horn in the imposition or enforcement of PRS from September 2002, when Albergottie was received into state custody, (Compl.¶ 2), until February of 2008, when city officials detained him pursuant to the state parole warrant, (Compl.¶ 5). Therefore, any claim based on the alleged unconstitutional imposition or enforcement of PRS from September 2002 to February 2008 is dismissed as to City Defendant Horn for lack of personal involvement.

Albergottie also asserts a claim of supervisory liability against Horn because he is the policymaker "who trains, supervises, and implements policy, practice, and custom to the employees," and that such polices, practices, and training included the execution of parole warrants at the "behest of the New York State Division of Parole" without investigation to determine the validity of parole warrants. (Pl.'s Mem. in Opposition to Motion to Dismiss II ¶¶ 4, 7.) However, Albergottie fails to establish supervisory liability because the City Defendants' conduct was privileged. If the detention of Albergottie pursuant to a facially valid parole warrant is privileged, and Albergottie alleges no other facts to support a claim of supervisory liability, then Albergottie fails to allege a plausible claim for failure to properly supervise and prevent constitutional violations.

Therefore, any claim alleged against Horn for supervisory liability is dismissed.

### 4. Claims Against New York City
Albergottie has asserted claims against New York City on the grounds that the city "repeatedly failed to make any meaningful investigation" into the parole violation charges against him, and failed to train city employees how to execute parole warrants. (Pl.'s Opp. II ¶ 6.) To sustain a claim for

relief pursuant to section 1983 against a municipal defendant, a plaintiff must show (1) the existence of an officially adopted policy or custom and (2) a causal connection between the custom or policy and the deprivation of a constitutional right. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978); *City of Canton v. Harris,* 489 U.S. 378, 388–89 (1989); *Walker v. City of New York,* 974 F.2d 293, 301 (2d Cir.1992). Because Albergottie does not provide any allegations or facts that New York City's policy, custom, or inadequate training caused, or was the moving force behind, the alleged constitutional violations, the City's motion is granted.

Even under the most liberal interpretation, the complaint does not assert plausible allegations that any officially adopted policy, custom, or inadequate training caused constitutional violations. The only allegations against New York City relate to the detention of Albergottie at a city jail pursuant to a parole warrant, (Pl.'s Opp. I ¶ 29; Pl's Opp. II ¶ 1), which is privileged, *see supra* Part III.B.2.

**\*10** Because the detention is privileged, and there are no further allegations that New York City policies caused constitutional violations, the Court grants the City Defendants motion to dismiss plaintiff's *Monell* claim against New York City.

### C. *State Claims*
To the extent plaintiff attempts to assert any remaining state law claims, the Court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3).

### III. CONCLUSION
The Court dismisses all claims against the defendants because the State Defendants are entitled to qualified immunity, the actions of the City Defendants are privileged, and Albergottie otherwise fails to state a plausible claim for relief. Accordingly, the complaint is dismissed.

SO ORDERED:

### All Citations

Not Reported in F.Supp.2d, 2011 WL 519296

Case 6:23-cv-01119-DNH-TWD    Document 8    Filed 11/14/23    Page 36 of 54

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

2014 WL 11350821
Only the Westlaw citation is currently available.
NOT FOR PRINT OR ELECTRONIC PUBLICATION
United States District Court, E.D. New York.

Stephen ARRINGTON, Plaintiff,

v.

CITY OF NEW YORK, and Joseph Garofalo
individually and in his capacity as a Police Officer of
the New York City Police Department, Defendants.

14-CV-3023 (ARR) (VMS)
|
Signed December 19, 2014
|
Filed 12/22/2014

**Attorneys and Law Firms**

Jon Martino, Villa Poinciana, Boca Raton, FL, Lillane G. Mair, Carter & Associate Attorneys, New York, NY, for Plaintiff.

Liza Jin Kyung Sohn, New York City Law Department, New York, NY, for Defendants.

*OPINION & ORDER*

ROSS, United States District Judge

**\*1** Plaintiff, Stephen Arrington, was arrested and prosecuted on assault charges after an altercation in which he claims to have fired a single, non-lethal gunshot in self-defense. Following the dismissal of all criminal charges against him, plaintiff commenced the present suit against defendants, Officer Joseph Garofalo and the City of New York. He raises claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, malicious abuse of process, fabrication of evidence, emotional distress, and violation of the Second Amendment. Defendants have moved to dismiss the complaint for failure to state a claim. Resolution of the motion largely turns on the duty of police officers to undertake further investigation before arresting a suspect who admits to all the elements of a crime, but claims he acted in self-defense. For the reasons set forth below, defendants' motion is granted.

**BACKGROUND**

On October 20, 2013, plaintiff, a former correction officer for the New York City Department of Correction, was in a car with his fiancée, his two daughters, and a friend of one of the daughters. First Amended Compl. ("Compl."), Dkt. # 11, ¶¶ 11, 17–18, 21. As they were approaching the friend's residence in Queens, New York, they saw a young man violently assaulting a young woman on the street. *Id.* ¶ 21. After parking in front of the residence, they continued to observe the assault, *id.* ¶¶ 23–24, and soon thereafter plaintiff exited the vehicle in order to take a closer look. *Id.* ¶ 30.

Before moving toward the crowd that had gathered around the assailant and his victim, plaintiff removed his pistol from a leg holster and placed it in his coat pocket. *Id.* ¶¶ 32, 35–36, 58. At the time, he had a concealed carry permit that allowed him to carry a concealed weapon outside of his home. *Id.* ¶ 12.

Soon after plaintiff had joined the other observers of the altercation, the assailant ceased his assault and shouted at the crowd to "mind ... [their own] business." *Id.* ¶ 37. The assailant began to move away from crowd, and as he passed by plaintiff, the two exchanged words. *Id.* if 39. Plaintiff asked the assailant why he was "beating on a female." *Id.* The assailant repeated that plaintiff should "mind [his own] business" or he would be "shot." Id The assailant then proceeded to leave the area. *Id.* ¶ 40.

Before plaintiff had an opportunity to return to his car, however, he heard the assailant call to a group of three or four other young men, *id.* ¶ 42, and the group of men immediately began moving toward plaintiff. *Id.* ¶ 44. As the group converged upon him, plaintiff took a defensive stance. *Id.* ¶¶ 49–51. The original assailant spoke first, again telling plaintiff that "he would be shot." Id if 53. A second individual repeated the threat and, at the same time, lifted his shirt to retrieve a 9 millimeter handgun from his waistband. *Id.* ¶ 55. As the man reached for his weapon, it slid from his waistband down his pant leg. *Id.* ¶ 57. At that moment, plaintiff fired a shot from the pistol he still had in his coat pocket. *Id.* ¶ 58. The shot may have grazed the original assailant. *Id.* ¶ 62. The group of young men immediately fled. *Id.* ¶ 63.

**\*2** Plaintiff returned to his car and drove one block away from the scene of the altercation. From there, he telephoned the police to report the incident. *Id.* ¶ 64. When the police arrived at plaintiff's location, plaintiff went back to the scene

Case 6:23-cv-01119-DNH-TWD    Document 8    Filed 11/14/23    Page 37 of 54

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

of the shooting with Officer Garofalo and explained to him what had occurred, including the circumstances that prompted plaintiff to fire his pistol in self-defense. *Id.* ¶ 65. Shortly thereafter, Officer Garofalo arrested plaintiff. *Id.* ¶ 66. The police confiscated plaintiff's weapon, his concealed carry permit, and his coat with the bullet hole in the pocket. *Id.* ¶¶ 60, 68, 128.

At the police precinct, plaintiff provided a written statement to the police in which he related the events that preceded his arrest. *Id.* ¶¶ 82, 89. With respect to the individual with the 9 millimeter handgun, plaintiff wrote: "[A]nother one from the group ran up to me raising his shirt as if to retrieve a weapon and asked do you want to get shot? At that point I felt he was to[o] close for me to retreat or reason with [him] because he was reaching for his weapon. I then discharged one round from my firearm through my jacket pocket." Mr. Arrington's Written Self-Defense Statement ("Written Statement"), attached as Ex. 5 to Decl. in Supp. of Pl.'s Papers in Opp'n to Defs.' Mot. to Dismiss, Dkt. # 25; *see* Compl. ¶ 82. [1]

[1]    In deciding a 12(b)(6) motion to dismiss, a court can consider "documents incorporated in [the complaint] by reference" as well as documents considered "integral to the complaint" by virtue of the complaint's heavy reliance "upon [the documents'] terms and effect[s]." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002) (internal citations and quotation marks omitted). Plaintiff refers to (and, at times, quotes from) the written statement he prepared for the police, Compl. ¶¶ 82, 89, 119, 131; the criminal complaint against him, *id.* 69, 84–86, 103, 118–1 19, 131–33, 137; and the letter revoking his concealed carry permit, *id.* ¶¶ 78, 180–81. The court considers each of these documents in deciding defendants' motion.

Officer Garofalo relied on plaintiff's written statement when preparing the criminal complaint against him. He acknowledged plaintiff's self-defense claim and reproduced in the complaint the portion of plaintiff's written statement quoted above. Criminal Court Complaint ("Criminal Compl."), attached as Ex. E to Decl. of Liza Sohn in Supp. of Defs.' Mot. to Dismiss, Dkt. # 20; *see* Compl. ¶ 119. The complaint did not incorporate any oral statements that plaintiff may have made to Officer Garofalo. Although plaintiff's arrest charges included attempted murder and criminal possession of a weapon, *id.* ¶ 66, the complaint

addressed violations of only New York Penal Law ("NYPL") 120.10–1 (assault in the first degree), NYPL 120.05–1 (assault in the second degree), and NYPL 120.05–2 (assault in the second degree involving a deadly weapon). Compl. 70–72.

On March 7, 2014, the grand jury declined to indict plaintiff on any charges, and a judgment of dismissal was entered on March 10, 2014. *Id.* ¶¶ 91–92.

Nine days later, plaintiff received a letter stating that his concealed carry permit had been revoked. *Id.* ¶ 78. Although plaintiff alleges that the revocation of the permit was "based squarely upon the underlying criminal charges that had been dismissed," Compl. ¶ 181, the full grounds for revocation provided in the March 19, 2014 letter were as follows: (1) "The facts and circumstances surrounding your arrest on 10/20/2013 for assault in the 1st degree, attempted murder, and criminal possession of a weapon"; (2) "Failure to notify the License Division of that arrest"; (3) "Open felony criminal case"; (4) "Active order of protection which prohibits your possession of firearms"; and (5) "Failure to comply with the 10/23/2013 directives of the License Division." Notice of Determination, attached as Ex. F of Supplemental Decl. of Liza Sohn in Further Supp. of Defs.' Mot. to Dismiss, Dkt. # 22.

**\*3**  Following the revocation of his concealed carry permit, plaintiff commenced the present action against Officer Garofalo and the City of New York. He alleges that Officer Garofalo is liable under 42 U.S.C. § 1983 for false arrest, malicious prosecution, malicious abuse of process, fabrication of evidence, and emotional distress. He further alleges that the City of New York is liable under § 1983 for malicious prosecution, malicious abuse of process, and the violation of plaintiff's Second Amendment right to bear arms. Defendants have moved to dismiss the entire complaint under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 555–56. A court

2014 WL 11350821

is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### B. Claims against Officer Garofalo

#### 1. False arrest

A § 1983 claim for false arrest, asserting a deprivation of the Fourth Amendment right to be free from unreasonable seizures, is "substantially the same" as a claim for false arrest under New York state law, *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). To prevail on a false arrest claim, a plaintiff must establish that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) (internal quotation marks omitted). Probable cause is a complete defense to a false arrest claim. *Weyant,* 101 F.3d at 852.

Probable cause to arrest exists where an officer has " 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir.2006) (quoting *Weyant,* 101 F.3d at 852). "Once officers possess facts sufficient to establish probable cause, ... [t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989). The law does not require an officer "to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997). Indeed, to do so "would put an unfair burden on law enforcement." *Krause,* 887 F.2d at 372. Pertinently here, the law also does "not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks v. Tavernier,* 316 F.3d 128, 135–36 (2d Cir.2003).

There are two limited scenarios, however, in which an individual's claim of innocence or assertion of a defense will negate probable cause. The first arises where an arresting officer knows or is deliberately indifferent to facts that bear directly on the arrestee's culpability. "[A]n officer may not

disregard plainly exculpatory evidence," *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir, 2006), and an "officer's awareness of the facts supporting a defense can eliminate probable cause." *Jocks,* 316 F.3d at 135. In *Jocks,* for instance, the court of appeals considered whether the defendant officer was entitled to judgment as a matter law on the issue of probable cause to arrest the plaintiff for assault. At trial, the plaintiff testified that he had thrown a telephone handset at the defendant off-duty police officer only after the defendant pointed his weapon at the plaintiff without identifying himself as a law enforcement officer. *Id.* at 132. Because, under the plaintiff's version of events, the defendant officer was necessarily aware of the plaintiff's valid self-defense claim, the court of appeals held that the jury could have properly found the officer liable for false arrest. *Id.* at 136. Similarly, in *Diop v. City of New York,* the court considered whether to grant summary judgment to the defendants on the ground that the defendant officer had probable cause to arrest the plaintiff for reckless driving. No. 1:13–CV825, 2014 WL 4958623, at *5 (S.D.N.Y. Aug. 21, 2014). According to the plaintiff, after the defendant officer observed the plaintiff driving recklessly, the plaintiff pulled his car alongside the officer's marked police vehicle and shouted to the officer that he had been robbed. *Id.* The officer then observed three men flee the plaintiff s vehicle while the plaintiff remained, begging, "Catch them, they rob[bed] me!" *Id.* at *2. The plaintiff explained to the officer that he had been ordered to drive at knife-point and asked that the officer observe a knife cut on his neck that had been made by one of the robbers. *Id.* Finding that the defendant officer "was or should have been aware of certain facts indicating that [the plaintiff's reckless driving] was justified" under New York law, the court denied the defendants' summary judgment motion. *Id* at *5.

*4 The second scenario, more relevant to the present case, arises where an arresting officer is aware of facts or circumstances that cast doubt upon a suspect's culpability such that further investigation is necessary before the officer has probable cause to arrest. In such a case, " 'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." ' *Wong v. Yoo,* 649 F.Supp.2d 34, 60 (E.D.N.Y.2009) (quoting *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996)). [2]

[2]   Although this principle was first set forth in the context of malicious prosecution claims, *see Colon v. City of New York,* 455 N.E.2d 1248, 1250 (N.Y.1983), courts have incorporated it into their analysis of false arrest claims as well. *See Kilburn*

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

*v. Vill. of Saranac Lake,* 413 Fed.Appx. 362, 363–64 (2d Cir, 2011); *Diop,* 2014 WL 4958623, at *4; *Foster v. Diop,* No. 11–CV–4731, 2013 WL 1339408, at * *11 (E.D.N.Y. Mar. 31, 2013); *Sankar v. City of New York,* 867 F.Supp.2d 297, 306 (E.D.N.Y.2012); *Rodriguez v. City of New York,* No. 08–CV–04173, 2012 WL 1059415, at *7 (E.D.N.Y. Mar. 28, 2012).

For instance, although an arresting officer ordinarily is allowed to rely upon "information ... received from a putative victim [of] or an eyewitness" to a crime as the basis for probable cause, further investigation may be necessary if "the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern,* 268 F.3d 65, 70 (2d Cir.2001). For this reason, the court in *Sankar v. City of New York* held that where "a bitter prior relationship exists [between the accused and the complainant] and is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officer may need to investigate further." 867 F.Supp.2d at 306 (internal citations, quotations marks, and original emphasis omitted). In the circumstances of that case, where the defendant officer knew of the contentious relationship between the plaintiff and his landlord, the landlord's allegation that he had been assaulted by the plaintiff was insufficient to establish probable cause. *Id.*

Similarly, where an arresting officer's own observations at the scene of a crime are in tension with the accusations against a suspect, further investigation may be necessary to establish probable cause for an arrest. In *Wong v. Yoo,* for example, the plaintiff challenged the constitutionality of his arrest following a physical altercation between the plaintiff and two other individuals, including an off-duty police officer. 649 F.Supp.2d 34, 47 (E.D.N.Y.2009). Maintaining that his actions were taken in self-defense, the plaintiff testified that when the two arresting officers arrived on the scene, one attacker "had his foot on [the] plaintiff's neck" and another "had his knee on [the plaintiff's] back." *Id.* at 60. Further, several witness testified that the "plaintiff was dazed, had sustained cuts and tears to his body and clothing, and was visibly bleeding and spitting up blood and teeth." Id. The court ruled that, "[c]rediting [the] plaintiff's version of events, a reasonable fact-finder could determine that [the alleged attackers'] postures upon the officers' arrival, [the] plaintiff's visible injuries, the lack of any threat of immediate harm, and the presence of eyewitnesses eager to provide statements in [the] plaintiff's favor were circumstances that ... required further investigation into whether probable cause to arrest

[the] plaintiff for assault was negated by the justification of self-defense." *Id.*

**\*5** Ultimately, however, the circumstances in which an officer has a duty to investigate an exculpatory defense prior to making an arrest remain narrow. The cases discussed above leave undisturbed the proposition that a self-defense claim that is simply "consistent with the facts alleged" will not, on its own, vitiate probable cause, *Panetta,* 460 F.3d at 395, and the mere fact that "an investigation might have cast doubt upon the basis for the arrest" is equally insufficient. *Curley,* 268 F.3d at 70. Moreover, a plaintiff will have difficulty arguing that a reasonable officer would have investigated further without showing that further investigation was in fact possible. *Compare Wong,* 649 F.Supp.2d at 60–61 (holding that "the [alleged] presence of eyewitnesses eager to provide statements in plaintiff's favor" weighed against finding existence of probable cause as a matter of law), *with Kilburn,* 413 Fed.Appx. at 363–64 (bolstering holding that officers had probable cause to arrest plaintiff notwithstanding plaintiff's claim of innocence by finding that "it is unclear what additional investigative steps would have been fruitful"), *and Pettus v. City of New York,* No. 10–CV–1442, 2011 WL 4458901, at *8 (E.D.N.Y. Aug. 23, 2011) (finding that "[n]o reasonable person would have believed further investigation necessary to establish probable cause to arrest" because, *inter alia,* the plaintiff had "not even identified the additional investigative steps he believe[d] the officers should have taken").

Here, plaintiff argues that the self-defense claim he made to Officer Garofalo negated any probable cause that the officer had to arrest him for assault. The question at this stage in the litigation is whether, assuming the truth of plaintiff's factual allegations and drawing all inferences in his favor, the pleadings support the inference that a reasonable officer would have credited plaintiff's self-defense claim and conducted further investigation prior to arrest. *See Foster,* 2013 WL 1339408, at *12 (finding complaint supported inference that the defendant officer should have investigated further before arresting plaintiff where it included "the vital allegation that [the officer] represented to plaintiff and plaintiff's family that she knew [the] accusations [providing the basis for arrest] were not true"); *Conte v. Cnty. of Nassau,* No. 06–CV–4746, 2008 WL 905879, at *10 (E.D.N.Y. Mar. 31, 2008) (finding complaint supported inference that defendants should have doubted veracity of accusations against plaintiff where it alleged that plaintiff had given documents to defendants prior to arrest that, in the court's

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

words, "provided irrefutable evidence of his innocence"); *McDermott v. City of New York,* No. 94CV2145, 1995 WL 347041, at *4 (E.D.N.Y. May 30, 1995) (dismissing false arrest claim where complaint alleged "no factual basis upon which [the arresting officer] should have questioned [the] credibility [of a witness to an alleged assault] other than her friendship with" the family of the victim, a relationship that "alone is insufficient to undermine the reasonableness of" the officer's reliance on the witness's statements to police).

Here, plaintiff's complaint fails to allege any facts that would distinguish plaintiff's self-defense claim from any other "unverified claim[ ] of justification" that arresting officers are under no duty to investigate before making an arrest. *Jocks,* 316 F.3d at 136. Plaintiff does not allege that Officer Garofalo had any "awareness of the facts" corroborating plaintiff's self-defense claim, *id.* at 135, and nothing described in the complaint would suggest that the officer's observations at the location of plaintiff's arrest would have obligated him to pursue "further investigation into whether [there was] probable cause to arrest plaintiff." *Wong,* 649 F.Supp.2d at 60. Indeed, prior to calling the police, plaintiff admittedly left the scene of the alleged crime, and, in doing so, separated himself from members of the crowd who could have corroborated his self-defense claim. Even though plaintiff alleges that he later returned to the scene of the shooting with Officer Garofalo, plaintiff does not set forth any investigatory steps that Officer Garofalo should have taken prior to making the arrest, nor does he allege that any witness remained at the scene. Instead, plaintiff simply insists in conclusory fashion that the officer was obligated to credit his "valid and credible claim of self-defense." Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss ("Pl. Mem."), Dkt. # 25, at 14.

*6 The only fact plaintiff has pleaded that arguably corroborates his claim to Officer Garofalo that he acted in self-defense is that he himself summoned the police and, in admitting to the shooting, supplied the probable cause for his own arrest. While this fact may be helpful to a plaintiff in some cases, on its own, and in the circumstances of this case, it is insufficient to render plaintiff's arrest unlawful.

Plaintiff attempts to find support for a contrary holding in *Levy v. City of New York,* 935 F.Supp.2d 575 (E.D.N.Y.2013). There, the plaintiff claimed that he and his wife were threatened by another couple in a public park. *Id.* at 582. In the midst of the dispute, the plaintiff telephoned the police and requested assistance. Id The threats continued, and the plaintiff grabbed a paring knife from a picnic basket in order

to protect his wife. Id The plaintiff never used the knife and, after the altercation ended, he once against called the police. *Id.* After officers arrived on scene, the plaintiff was arrested and charged with criminal possession of a weapon and disorderly conduct. *Id.* at 583–84. The charges were later dismissed, and the prosecutor "apologized for the behavior of the arresting officers." *Id.* at 584.

In considering the defendants' summary judgment motion, the court held that, under the plaintiff's version of events, there were "facts [that] should have suggested to Defendants that Plaintiff acted out of justifiable self-defense ... thus negating a finding of probable cause." *Id.* at 587. These included the fact that the plaintiff "clearly explained" to the arresting officer that he grabbed the paring knife in order to defend his wife; that the plaintiff "placed the knife in his pocket before speaking to the police"; and that the plaintiff "was the person who requested police assistance in the first place." *Id.*

While these facts suggest some similarities between *Levy* and the present case, important differences remain. The plaintiff in *Levy* first called the police prior to the commission of his alleged crime, a circumstance in which a reasonable officer could conclude there was less incentive for Levy to lie about the threats he and his wife were facing than here, where plaintiff reported the threats he had faced only after the alleged assault he committed in front of a crowd of people. Further, Levy never left the scene of the alleged crime. *Id.* at 582, Yet, prior to arresting Levy, the officers did not question the other couple, also still present at the scene. Id. at 587. The other man stated that the plaintiff had pulled out a knife, but gave no "indication that [Levy] used the knife in a threatening or otherwise unlawful manner." Id. As such, the minimal information received from the purported victim did not implicate the plaintiff in any crime, and there were clear investigative steps that the defendant officers could have taken, but did not, prior to making the arrest. For these reasons, *Levy* is not analogous to this case.

In sum, the facts alleged in plaintiff's complaint support a finding that Officer Garofalo had probable cause to arrest plaintiff for assault, and plaintiff's false arrest claim must therefore be dismissed.

### 2. Malicious Prosecution

In New York, the elements of a malicious prosecution claim are " '(1) the initiation of a proceeding [by the defendant], (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice.' " *Savino v. City of New York,* 331

Case 6:23-cv-01119-DNH-TWD   Document 8   Filed 11/14/23   Page 41 of 54
Arrington v. City of New York, Not Reported in Fed. Supp. (2014)
2014 WL 11350821

F.3d 63, 72 (2d Cir.2003) (quoting *Colon,* 455 N.E.2d at 1250). "In the context of malicious prosecution, probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Jackson v. City of New York,* 939 F.Supp.2d 235, 250 (E.D.N.Y.2013) (internal citation and quotation marks omitted). While this standard "is slightly higher than the standard for false arrest cases," *Stansbury v. Wertman,* 721 F.3d 84, 95 (2d Cir.2013), " 'a malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest.' " *McKay v. City of New York,* No. 13 Civ. 2948, 2014 WL 3700594, at *9 (S.D.N.Y. July 24, 2014) (quoting *Carson v. Lewis,* 35 F.Supp.2d 250, 263 (E.D.N.Y.1999)).

**\*7** Here, plaintiff has not identified any facts that Officer Garofalo uncovered, or even should have uncovered, following plaintiff's arrest that would undercut a finding of probable cause for his prosecution. In fact, plaintiff himself treats probable cause to arrest and probable cause to prosecute as indistinguishable. Pl. Mem. 12. As a result, because plaintiff's own complaint supports the existence of probable cause, plaintiff's malicious prosecution claim must also be dismissed.

### 3. Malicious Abuse of Process

A malicious abuse of process claim will lie against a defendant " 'who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.' " *Savino,* 331 F.3d at 76 (quoting *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994)). The crux of the claim is the collateral objective element, which requires proof that the defendant "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* at 77 (differentiating between an "improper purpose" and an "improper motive"). Seeking to convict an individual out of vengeance or in retaliation is insufficient, as "the goal—convicting the [individual]—is a legitimate use of process." *Douglas v. City of New York,* 595 F.Supp.2d 333, 344 (S.D.N.Y.2009); see *Hoffman v. Town of Southampton,* 893 F.Supp.2d 438, 449 (E.D.N.Y.2012), *aff'd sub nom. Peter L. Hoffman, Lotte, LLC v. Town of Southampton,* 523 Fed.Appx. 770 (2d Cir.2013) ("[E]ven if the defendants had a vindictive or a vicious motive in bringing the additional charges against plaintiffs to coerce a disposition in the

criminal prosecution, the objective of all of the actions was still to prevail on the prosecution ... rather than to achieve some objective collateral to the prosecution itself. Under these circumstances, ... no collateral objective has been alleged.").

Here, plaintiff argues that Officer Garofalo's collateral objective in commencing the prosecution of plaintiff was "to punish [him] for exercising his Second Amendment right to beararms." Compl. ¶ 150; *see* Pl. Mem. 18. Even if true, this threadbare allegation only speaks to Officer Garofalo's motivation in initiating criminal charges against plaintiff. The complaint does not allege that plaintiff's prosecution aimed to achieve some objective "outside the legitimate ends of the [legal] process." *Savino,* 331 F.3d at 77 (granting summary judgment against plaintiff who claimed that defendants arrested him in retaliation for the embarrassing media attention that plaintiff, a fellow police officer, had generated). For this reason, the malicious abuse of process claim must be dismissed.

### 4. Fabrication of evidence

Fabrication of evidence claims are actionable under § 1983 as a violation of a plaintiff's right to a fair trial. *Ricciuti,* 124 F.3d at 130. Such a claim requires that " 'an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.' " *Hoyos v. City of New York,* 999 F.Supp.2d 375, 392 (E.D.N.Y.2013) (quoting *Jovanovic v. City of New York,* 486 Fed.Appx. 149, 152 (2d Cir.2012)).

Here, plaintiff cannot even establish the basic element of fabrication. Plaintiff's claim rests on the allegation that Officer Garofalo "purpose[ly] suppressed [plaintiff's] telling police that he actually saw the firearm in the waistband" of the young man at whom plaintiff shot, Compl. ¶ 154, by writing in the criminal complaint that the young man "ran up to [plaintiff] raising his shirt *as if* [to] retrieve a weapon." *Id.* ¶ 119. Yet, the allegedly deficient portion of the criminal complaint that Officer Garofalo prepared quotes directly from plaintiff s written statement. Criminal Compl. Plaintiff himself wrote that "another [individual] from the group ran up to [him] raising his shirt as if to retrieve a weapon" and he "felt [the other individual] was to[o] close for me to retreat or reason with [him] because [that individual] was reaching for his weapon." Written Statement. The verbatim reproduction of both of these statements in the criminal complaint cannot, in any way, be characterized as "false evidence fabricated" by

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

Case 6:23-cv-01119-DNH-TWD    Document 8    Filed 11/14/23    Page 42 of 54

2014 WL 11350821

Officer Garofalo. *Zahrey v. Coffey,* 221 F.3d 342, 355 (2d Cir.2000). Plaintiff's fabrication claim thus fails.

### 5. Emotional distress

**\*8** Plaintiff s final claims against Officer Garofalo must be dismissed because claims for negligent, reckless, or intentional infliction of emotional distress are not cognizable under § 1983. A § 1983 action "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer,* 63 F.3d at 119. While plaintiff insists that his "claims for distress are founded purely upon federal law," Pl. Mem. 20, plaintiff nowhere identifies the constitutional provision or federal statute that secures the right that plaintiff posits. Indeed, no such right exists. *See Rojas v. Alexander's Dep't Store, Inc.,* 654 F.Supp. 856, 859 (E.D.N.Y.1986).

Plaintiff attempts to locate this right in two cases that discuss how emotional distress factors into a plaintiffs damage award. Pl. Mem. 20–21 (discussing *Memphis Cmty. School Dist. v. Stachura,* 477 U.S. 299 (1986), and *Tretola v. Cnty. of Nassau,* No. 08–CV–3225, 2014 WL 1494371 (E.D.N.Y. Apr. 16, 2014)). Yet, in both cases, emotional harm was the result of the violation of a federal right, not the violation itself. In *Memphis,* the plaintiff's damages, emotional and other, were caused by First Amendment and due process violations. 477 U.S. at 313. In *Tretola,* the damages were caused by the plaintiff's false arrest and malicious prosecution. 2014 WL 1494371, at \*1. The mere fact that "compensatory damages may include ... mental anguish and suffering" does not transform freedom from mental anguish and suffering into a freestanding federal right. *Memphis.* 477 U.S. at 307 (internal quotation marks omitted). As such, plaintiff s emotional distress claims must be dismissed.

### C. Claims against the City of New York

In addition to the claims against Officer Garofalo, plaintiff asserts § 1983 claims against the City of New York for malicious prosecution, malicious abuse of process, and the violation of plaintiff's Second Amendment right to bear arms in self-defense.

For a § 1983 claim against a municipality to survive a motion to dismiss, a plaintiff must plead the substantive elements of the constitutional violation as well as facts permitting a finding that the violation "resulted from a municipal custom or policy." *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (E.D.N.Y.2003) (discussing requirements of municipal

liability under § 1983 as set forth in *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978)). Because the court has already dismissed plaintiff's malicious prosecution and malicious abuse of process claims against Officer Garofalo, dismissal of these claims against the City of New York is warranted as well. *See Matthews v. City of New York,* 889 F.Supp.2d 418, 445 (E.D.N.Y.2012).

Plaintiff's Second Amendment claim against the City of New York must also be dismissed. At the outset, plaintiff makes no attempt to demonstrate his entitlement under the Constitution to carry a concealed weapon outside of his home. He fails to grapple with any relevant caselaw and ignores the fact that the right to bear arms in public is much more limited in scope than the right to bear arms inside one's home. *See Kachalsky v. Cnty. of Westchester,* 701 F.3d 81, 100 (2d Cir.2012) (recognizing that the Supreme Court's Second Amendment cases "have arisen only in connection with prohibitions on the possession of firearms in the home," but assessing constitutionality of gun licensing statute on "assumption" that the Second Amendment has "*some* application in the very different context of the public possession of firearms" (emphasis in original)). Plaintiff also ignores the Second Circuit's more specific determination that no constitutional issue arises when New York prohibits a concealed carry permit to an individual who asserts a "generalized desire to carry a concealed weapon to protect [his] person and property," but fails to "demonstrate a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Id.* at 86 (internal citations and quotation marks omitted) (considering facial and as-applied challenges to NYPL § 400.00(2)(f), which provides that a concealed carry permit will be granted to "any person when proper cause exists for the issuance thereof").[3] The court cannot identify any tenable Second Amendment claim in plaintiff's pleadings or in the sparse sentences he devotes to the issue in his opposition papers.

[3]    New York law also allows individuals who fall within one of four specific classes of people to obtain a license to carry a concealed handgun in certain circumstances outside of the home. NYPL § 400.00(2)(b)-(e). These provisions are irrelevant to the case at hand.

**\*9** Nevertheless, the court need not pursue an uncharted constitutional analysis, as dismissal of plaintiff's Second Amendment claim is plainly warranted on the ground that

Case 6:23-cv-01119-DNH-TWD    Document 8    Filed 11/14/23    Page 43 of 54
Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

plaintiff has pleaded no facts supporting the inference that a municipal policy or custom caused the constitutional violation alleged here. Plaintiff states only that "[t]he NYPD, acting pursuant to official municipal policy, as to gun licensing, claims to act pursuant to a policy that allows it to act on behalf of the City of New York to confiscate and destroy firearms and terminate gun licensing privileges where one has been charged with a crime, even where said charges are later thrown out." Compl. ¶ 113. Yet, this conclusory statement simply parrots the details of plaintiff's own case and is insufficient to protect plaintiff's claim from dismissal. *See Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) ("The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."); *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."). While plaintiff's failure to identify an explicit policy is not fatal to his claim, the complaint must set forth at least circumstantial evidence of the existence of a policy, such as "evidence

that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges" of similar constitutional violations. *Id.* The complaint provides no basis for allowing plaintiffs Second Amendment claim against the City of New York to proceed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. As plaintiff has agreed that his amended pleading is his "last and strongest complaint" in this proceeding, Conference Tr., Sept. 10, 2014, at 2, no further leave to amend is warranted. The complaint is dismissed in its entirety, and the Clerk of Court is directed to close this case

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2014 WL 11350821

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3405636
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Marcel D. PERRY, Plaintiff,

v.

CITY OF ALBANY, et al., Defendants.

8:20-CV-165 (GTS/DJS)
|
Signed 05/06/2020

**Attorneys and Law Firms**

MARCEL D. PERRY, Plaintiff, Pro Se, 109 Ford Avenue,
Troy, NY 12180.

**REPORT-RECOMMENDATION and ORDER**

Daniel J. Stewart, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a *pro se* Complaint
filed by Marcel Perry. Dkt. No. 1. Plaintiff has not paid
the filing fee, but instead submitted a Motion to Proceed *in
Forma Pauperis* (IFP). Dkt. No. 3. By separate Order, this
Court granted Plaintiff's Application to proceed IFP. Now, in
accordance with 28 U.S.C. §§ 1915(e) & 1915A, the Court
will *sua sponte* review the sufficiency of the Complaint.

**I. DISCUSSION**

**A. Pleading Requirements**

Section 1915(e) of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed *in forma pauperis*, "the
court shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious; (ii)
fails to state a claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune
from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, under
28 U.S.C. § 1915A, a court must review "a complaint in a civil
action in which a prisoner seeks redress from a governmental
entity or officer or employee of a governmental entity" and
must "identify cognizable claims or dismiss the complaint, or
any portion of the complaint, if the complaint (1) is frivolous,
malicious, or fails to state a claim upon which relief may

be granted; or (2) seeks monetary relief from a defendant
who is immune from such relief." *Id.* at § 1915A(a) & (b).
Thus, it is a court's responsibility to determine that a plaintiff
may properly maintain his complaint before permitting him
to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to
show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912
F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme
caution ... in ordering *sua sponte* dismissal of a *pro se*
complaint *before* the adverse party has been served and both
parties (but particularly the plaintiff) have had an opportunity
to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983) (emphasis in original) (citations omitted). Therefore, a
court should not dismiss a complaint if the plaintiff has stated
"enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing
*Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the
court should construe the factual allegations in the light most
favorable to the plaintiff, "the tenet that a court must accept
as true all of the allegations contained in a complaint is
inapplicable to legal conclusions." *Id.* "Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Id.* (citing *Bell Atl.
Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-
pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged
– but it has not 'show[n]'–'that the pleader is entitled to
relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A
pleading that only "tenders naked assertions devoid of further
factual enhancement" will not suffice. *Id.* at 678 (further
citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the
proposition that Federal Rule of Civil Procedure 8 "demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation"). Allegations that "are so vague as to fail
to give the defendants adequate notice of the claims against
them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.
Appx. 102, 104 (2d Cir. 2009).

**\*2** Furthermore, a court's initial review of a complaint
under §§ 1915(e) & 1915A must encompass the applicable
standards of the Federal Rules of Civil Procedure. Rule 8 of
the Federal Rules of Civil Procedure provides that a pleading
must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1323 at 735 (1990)).

A complaint that fails to comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that

its true substance, if any, is well disguised." *Hudson v. Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted). In those cases in which the court dismisses a *pro se* complaint for failure to comply with these Rules, it should afford the plaintiff leave to amend the complaint to state a claim that is on its face nonfrivolous. *See Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Allegations Contained in Plaintiff's Complaint**

Plaintiff brings this lawsuit pursuant to 28 U.S.C. § 1983, alleging violations of his constitutional rights. *See* Compl. He alleges that City of Albany police officers and detectives brought two false criminal sale of marijuana charges and one false criminal possession of marijuana charge against him. *Id.* at ¶ 12. He alleges that on numerous occasions in May, June and July of 2017, Defendants Fargione, Regan, Scalise, and Chromczak repeatedly interrogated him regarding a missing person case and engaged in harassing and threatening behavior to both Plaintiff and his wife. *Id.* at ¶¶ 13-22. Plaintiff would walk away or refuse to respond without an attorney present, and on July 8, 2017, Defendants Regan and Scalise threatened that if Plaintiff did not give them information regarding the missing person, they would frame him. *Id.* at ¶ 22.

**\*3** On July 20, 2017, Defendants Regan and Scalise initiated a parole violation against Plaintiff by contacting his parole officer, Defendant LeBarron, and relayed rumors regarding Plaintiff's alleged involvement in marijuana and the missing person case. *Id.* at ¶ 23. In August of 2017, Defendants Regan and Fargione continued to attempt to interrogate Plaintiff and threatened to frame him. *Id.* at ¶¶ 24-25. Plaintiff alleges Defendants initiated a bad faith parole warrant based on false charges, and that the detectives and parole officer conspired to circumvent the requirement of probable cause for arrest. *Id.* at ¶ 27. Defendant LeBarron ordered Plaintiff to report to the Division of Parole, and the Defendant Detectives made police reports and agreed to provide false statements that Plaintiff sold marijuana on July 26 and August 9, 2017. *Id.* at ¶¶ 28-29. When Plaintiff reported to probation, Defendants Fargione and Hughes began questioning him again regarding the missing person, and Plaintiff declined to speak without a lawyer, and they threatened to frame him regarding marijuana sales. *Id.* at ¶ 30. Defendant Fargione then handcuffed Plaintiff and drove him to the City of Albany Police Department. *Id.* at ¶ 30. Plaintiff was kept at Albany Police Department for 24 hours on September 27, 2017 in

an interrogation room, while Defendant Fargione attempted to interrogate him regarding the missing person, without allowing Plaintiff a lawyer, and again threatening to frame him. *Id.* at ¶ 31.

Plaintiff alleges that on September 28, 2017, the Defendant Detectives initiated criminal charges in city court for the sale and possession of marijuana, making police reports and agreeing to provide false statements in criminal court proceedings. *Id.* at ¶¶ 32-33. Plaintiff alleges that Defendants utilized perjured testimony, false police reports, and insufficient drug lab analysis reports to deprive him of his liberty. *Id.* at ¶ 34. On September 29, 2017 Defendants Regan and Chromczak arrested Plaintiff for allegedly bringing a bag with sixty grams of marijuana into a laundromat, and he was imprisoned in Albany County Jail. *Id.* at ¶¶ 35-38. Each Defendant Detective testified as a witness on November 28, 2017 and December 5, 2017 regarding the parole warrant; on December 30, 2017, the Administrative Law Judge accepted their false statements and fabricated evidence and revoked Plaintiff's parole. *Id.* at ¶¶ 40-46. On February 14, 2018, the Albany City Criminal Court dismissed the criminal charges. *Id.* at ¶¶ 47 & 49. Plaintiff alleges that his attorney filed an appeal of the ALJ's December 30, 2017 decision. *Id.* at ¶ 50.

Plaintiff alleges that he committed no crime and that no Defendant had probable cause to believe that he was involved any illegal activity, and that all Defendants acted in conspiracy to bring the fabricated charges against him. *Id.* at ¶¶ 51-54. He alleges that Defendant City of Albany failed to properly train, supervise, and/or discipline the individual Defendants regarding proper police practices. *Id.* at ¶ 56. Plaintiff alleges that his local criminal court charges were dismissed, and that there is a "meritorious appeal brief submission," but that the New York State Board of Parole Appeals Unit denied his appeal in a conspiracy to wrongfully convict Plaintiff. *Id.* at ¶ 57.

Plaintiff alleges that, as a result, he was incarcerated from September 27, 2017 through September 28, 2017 and from September 29, 2017 through May 20, 2019. *Id.* at ¶ 58. Plaintiff alleges that he has suffered loss of liberty, emotional distress, and physical distress. *Id.* at ¶ 59. Plaintiff seeks compensatory and punitive damages. *Id.* at ¶ 64. [1]

[1]   Plaintiff references a number of documents throughout his Complaint that he states are attached

to the Complaint; however, no such documents were included with the Complaint. *See* Dkt. No. 1.

### C. Analysis of Plaintiff's Claims

Plaintiff brings a due process claim based on fabrication of evidence and malicious prosecution against each of the individual Defendants, a Fourth Amendment illegal seizure claim, a Fifth Amendment claim, a Sixth Amendment claim, and state law claims for false imprisonment, false arrest, malicious prosecution, and civil conspiracy. He also brings a municipal liability claim against the City of Albany.

Although not entirely clear, Plaintiff appears to allege that the criminal charges against him based on Defendants' wrongful actions were dismissed, but that his parole revocation was sustained, resulting in his incarceration. Compl. at ¶ 57. While Plaintiff's factual allegations are set forth in great detail, the Complaint fails to offer the same specificity regarding his legal causes of action. He identifies just three claims - two against individual Defendants and one against the City of Albany. *See* Compl. at ¶¶ 60-64. The claims against the individual Defendants refer to Fourth and Fourteenth Amendment claims and state law violations and thus are somewhat inconsistent with his earlier recitation of his claims. *Compare id. with* Compl. at ¶ 3. Plaintiff also fails to specifically delineate whether he asserts claims regarding both allegedly dismissed criminal charges and his parole revocation proceedings or if the discussion of the criminal charges is offered merely for factual context regarding the parole revocation proceedings. The Complaint, therefore, fails to provide the specific notice discussed above required by the Federal Rules of Civil Procedure regarding the precise nature of Plaintiff's legal theories. This is a defect that could be remedied with more defined pleading.

**\*4** The Court notes also that, at least as it relates to Plaintiff's potential parole revocation claims, they are likely barred by *Heck*. In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486 (1994) (emphasis in original).

"*Heck* and its 'favorable termination' rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole." *Partee v. City of Syracuse*, 2019 WL 2617901, at *6 (N.D.N.Y. May 23, 2019), *report and recommendation adopted*, 2019 WL 2616954 (N.D.N.Y. June 26, 2019) (citations omitted). Claims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*. *See, e.g.*, *Dayter v. Caputo*, 2019 WL 3037504, at *5 (N.D.N.Y. June 4, 2019), *report and recommendation adopted*, 2019 WL 3035409 (N.D.N.Y. July 10, 2019) (false arrest and false imprisonment) (citing cases); *Corley v. Vance*, 365 F. Supp. 3d 407, 441 (S.D.N.Y. 2019) (fabrication of evidence) (citing cases); *Godley v. Onondaga Cty.*, 2017 WL 2805162, at *5 (N.D.N.Y. Jan. 6, 2017), *report and recommendation adopted*, 2017 WL 2804944 (N.D.N.Y. June 28, 2017) (malicious prosecution) (citing cases).

This case deals with events ultimately leading to Plaintiff's parole revocation. As such, success on this case would necessarily call into question the validity of Plaintiff's parole revocation. Because Plaintiff has failed to show that this has been overturned his § 1983 claims are barred under *Heck*. "Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Plaintiff may be able to address the *Heck* bar identified here through more detailed pleading regarding the status of his parole revocation, or through pleading demonstrating that his claims do not "necessarily imply the invalidity" of his parole revocation.

*See Heck v. Humphrey*, 512 U.S. at 487. As a result, the Court recommends that Plaintiff's claims addressed here as likely barred by *Heck* be dismissed without prejudice. *See Amaker v. Weiner*, 179 F.3d 48. 52 (2d Cir. 1999).

To the extent Plaintiff alleges a Fifth Amendment claim, *see* Compl. at ¶ 3, such a claim lies only against federal actors, not city police officers, and so Plaintiff fails to state a Fifth Amendment claim. *Juliano v. DeAngelis*, 2007 WL 1267274, at *2 (N.D.N.Y. Apr. 30, 2007). As such, the Court recommends that this claim be dismissed with prejudice, as it could not be cured with better pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**\*5** The Court notes that guidance regarding proceeding *pro se* and the *Pro Se* Assistance Program can be found in the *pro se* handbook that was provided to Plaintiff at the time he filed his Complaint. *See* Northern District of New York Federal Court Bar Association website, *available at* www.ndnyfcba.org/about-us/pro-se-assistance-program (last visited May 4, 2020).

## II. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Plaintiff's Fifth Amendment claim be **DISMISSED with prejudice**; and it is further

**RECOMMENDED**, that the remainder of the Complaint be **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e) & 1915A for failure to state a claim upon which relief may be granted, but that Plaintiff be granted leave to amend; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

2020 WL 3405636

2    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2020 WL 3405636

**End of Document**                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3403080
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Marcel D. PERRY, Plaintiff,

v.

CITY OF ALBANY, as a municipal corporation;
Detective John Regan, of City of Albany Police
Dept.; Detective Michael Fargione, of City of Albany
Police Dept.; Detective Anthony Scalise, of City of
Albany Police Dept.; Detective Joseph Chromczak,
of City of Albany Police Dept.; and Parole Officer
Rose LeBarron, of Albany Area office, Defendants.

8:20-CV-0165 (GTS/DJS)
|
Signed 06/19/2020

**Attorneys and Law Firms**

MARCEL D. PERRY, Plaintiff, Pro Se, 109 Ford Avenue,
Troy, New York 12109.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Marcel D. Perry ("Plaintiff") against the City
of Albany, a parole officer, and four employees of the City
of Albany Police Department ("Defendants") pursuant to 42
U.S.C. § 1983, is United States Magistrate Judge Daniel
J. Stewart's Report-Recommendation recommending that
Plaintiff's Fifth Amendment claim be *sua sponte* dismissed
with prejudice for failure to state a claim and that the
remainder of Plaintiff's claims be *sua sponte* dismissed
without prejudice and with leave to amend for failure to state
a claim, pursuant to 28 U.S.C. §§ 1915A(a),(b) and 1915(e)
(2)(B). (Dkt. No. 8.) Plaintiff has not filed an Objection to
the Report-Recommendation, and the deadline by which to do so
has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Stewart's thorough Report-
Recommendation, the Court can find no clear-error in
the Report-Recommendation. [1] Magistrate Judge Stewart
employed the proper standards, accurately recited the facts,

and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein. To those reasons, the
Court adds only one minor point.

[1]    When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a "clear error"
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

Although Magistrate Judge Stewart recommended that the
various claims in the Complaint be dismissed without
prejudice and with leave to amend those claims, the Court
respectfully construes that recommendation as one that
those claims be dismissed with prejudice unless Plaintiff
successfully amends those claims. *See Wilmer v. Albany
County Police*, 19-CV-1416, 2020 WL 137240, at \*1 &
n.2 (N.D.N.Y. Jan. 13, 2020) (Suddaby, C.J., adopting
Report-Recommendation of Dancks, M.J.); *Logan v. Town
of Windsor*, 18-CV-0593, 2018 WL 3853996, at \*1 & n.3
(N.D.N.Y. Aug. 14, 2018) (Suddaby, C.J., adopting Report-
Recommendation of Peebles, M.J.).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Stewart's Report-
Recommendation (Dkt. No. 8) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Fifth Amendment claim is *sua
sponte* **DISMISSED** with prejudice pursuant to 28 U.S.C.
§§ 1915A(a),(b) and 1915(e)(2)(B)); and it is further

**ORDERED** that the remaining claims in Plaintiff's
Complaint (Dkt. No. 1) **SHALL BE** *sua sponte* **DISMISSED
with prejudice**, and without further order of the Court
pursuant to 28 U.S.C. §§ 1915A(a),(b) and 1915(e)(2)
(B) **UNLESS**, within **THIRTY (30) DAYS** of the date
of this Decision and Order, Plaintiff files an **AMENDED
COMPLAINT** that corrects the pleading defects identified in

2020 WL 3403080

Magistrate Judge Stewart's Report-Recommendation; and it is further

**\*2** **ORDERED** that, should Plaintiff timely file an Amended Complaint, it shall be referred to Magistrate Judge Stewart for review without further Order of this Court.

**All Citations**

Slip Copy, 2020 WL 3403080

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4447383
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

David HESTER–BEY, Plaintiff,

v.

POLICE DEPARTMENT, Defendant.

No. 12–CV–3320 (KAM).
|
Sept. 24, 2012.

**Attorneys and Law Firms**

David Hester-Bey, Brooklyn, NY, pro se.

*MEMORANDUM AND ORDER*

MATSUMOTO, District Judge.

**\*1** On July 2, 2012, *pro se* plaintiff David Hester–Bey filed this action alleging false arrest. The Court liberally construes the action as being brought pursuant to 42 U.S.C. § 1983 against the New York City Police Department. Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the New York City Police Department is dismissed from this action and plaintiff is granted thirty (30) days from the date of this Order to file an amended complaint.

**STANDARD OF REVIEW**

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the plaintiffs' *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A complaint must plead sufficient facts to "state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

**BACKGROUND**

Plaintiff brings this action for false arrest alleging that on June 21, 2011, he was falsely arrested and "was charged with swallowing drugs/obstruct[ing] evidence." Compl. at 1. Plaintiff states that he was accused of swallowing heroine and was taken to a hospital to have his stomach pumped, but drugs were not recovered from his body. *Id.* Plaintiff further states that on July 2, 2011, he was arrested again and charged with swallowing cocaine. *Id.* Plaintiff alleges that he was also taken to the hospital on this occasion to have his stomach pumped and again no drugs were found. Comp. at 1–2. Plaintiff seeks unspecified damages. Compl. at 2.

**DISCUSSION**

Plaintiff's complaint may not proceed as presented. Section 1983 provides that an action may only be maintained against a "person" who has deprived another of rights under the "Constitution and Laws ." 42 U.S.C. § 1983. The New York City Police Department is not a "person" within the meaning of section 1983 and is therefore, not a suable entity. *Campbell v. New York City Police,* No. 05 CV 2858, 2005 WL 1970954, at \*1 (E.D.N.Y. Aug. 10, 2005) (the New York City Police Department is not a proper party under § 1983).

**LEAVE TO AMEND**

**\*2** In light of this Court's duty to liberally construe *pro se* complaints, plaintiff is granted thirty (30) days leave from the date of this order to file an amended complaint to name a proper defendant(s). *Cruz v. Gomez.* 202 F.3d 593 (2d Cir.2000). Plaintiff is advised that pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain statement of claim against each defendant named so that they have adequate notice of the claims against them. *Iqbal,* 556 U.S. at 677–79 (2009) (Rule 8 "demands more than an unadorned, the-defendantunlawfully-harmed-

2012 WL 4447383

me accusation."). A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See also Bell Atlantic Corp.,* 550 U.S. at 544 (2007).

### CONCLUSION

Accordingly, the New York City Police Department is dismissed from this action. Plaintiff is granted thirty (30) days from the date of this order to file an amended complaint to name a proper defendant(s). Plaintiff is directed that his amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure and must specify dates and facts supporting the personal involvement of each named defendant. If plaintiff cannot identify the individual(s) by name at this time, he may name "John Doe" defendants and provide a physical description for each, along with his or her place of employment.

The amended complaint must be captioned as an "Amended Complaint," name all defendants in the caption, and bear the same docket number as this Order. If plaintiff fails to file an amended complaint, judgment dismissing this action without prejudice shall be entered.

No summons shall issue at this time and all further proceedings shall be stayed for thirty (30) days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 269 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4447383

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3580286
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

David HAYWARD, Plaintiff,
v.
The CITY OF NEW YORK; P.O. Jeffrey
Hill, 73rd Precinct, Badge# Unknown;
P.O. John Doe, 73rd Precinct, Defendants.

No. 12–CV–3220 (ENV).
|
Aug. 17, 2012.

**Attorneys and Law Firms**

David Hayward, Sonyea, NY, pro se.

### MEMORANDUM AND ORDER

VITALIANO, District Judge.

**\*1** Plaintiff David Hayward, who is currently incarcerated at the Groveland Correctional Facility, files this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 against the City of New York and several individual defendants. Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted. For the reasons discussed below, the City of New York and defendant John Doe are dismissed from the action. The claims, however, against defendant Jeffrey Hill shall proceed.

### BACKGROUND

Plaintiff alleges that on August 16, 2011, he was falsely arrested at his home in Brooklyn, New York by Police Officer Jeffrey Hill of the 73rdr Precinct. He states that the charges against him were subsequently dismissed, but resulted in a parole violation and one-year prison sentence. Plaintiff seeks monetary damages.

### STANDARD OF REVIEW

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys. The Court is required to read a

plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Under 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A. Upon review, a district court shall dismiss a prisoner's complaint *sua sponte* if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." *Id.; Liner v. Goord,* 196 F.3d 132, 134 & n. 1 (2d Cir.1999) (noting that under the Prison Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is not only permitted but mandatory); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999).

### DISCUSSION

*Claims against the City of New York and John Doe*

Plaintiffs claims against the City of New York must be dismissed. A municipality can be liable under § 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The doctrine of *respondeat superior* cannot be used to establish municipal liability. *Connick v. Thompson,* ––– U.S. ––––, ––––, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011); *Cash v. County of Erie,* 654 F.3d 324, 333–34 (2d Cir.2011); *Dzugas–Smith v. Southold Union Free School Dist.,* No. 08 CV 1319, 2012 WL 1655540, at \*20 (E.D.N.Y. May 9, 2012). Here, plaintiff does not allege, and nothing in his complaint suggests, that any of the allegedly wrongful acts or omissions on the part of any City employee are attributable to a municipal policy or custom.

2012 WL 3580286

Thus, plaintiff has not made a showing, in his pleadings, sufficient to impose *Monell* liability on the City of New York.

**\*2** Furthermore, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1991)). Here, although plaintiff names Police Officer John Doe as a defendant in the caption of the complaint, he fails to make any allegations against or otherwise discuss that defendant in the body of his pleading. Plaintiff's claims against Police Officer John Doe are, therefore, dismissed without prejudice.

## CONCLUSION

Accordingly, all claims against the City of New York and Police Officer John Doe are dismissed without prejudice pursuant to 28 U.S.C. § 1915A. No summonses shall issue as to these defendants and the Clerk of Court is directed to

amend the caption to reflect their dismissal. Plaintiff's claims, however, shall proceed against Police Officer Jeffrey Hill of the 73rd Precinct.

The United States Marshal Service is directed to serve the summons, complaint, and this Memorandum and Order upon the remaining defendant without prepayment of fees. A courtesy copy of the same papers shall be mailed to the Corporation Counsel for the City of New York. All pretrial matters are referred to Magistrate Judge Cheryl L. Pollak. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v.* United States, 269 U.S. 438, 444–45 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3580286

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.